192 P.3d 394 (2008)
WESTCOTT HOMES LLC, a Washington limited liability company, Tyndall Ridge LLC, a Washington limited liability company, Appellant,
v.
Michael A. CHAMNESS and Cherie L. Chamness, husband and wife, Respondents.
No. 60762-6-I.
Court of Appeals of Washington, Division 1.
September 15, 2008.
*395 Michael Maurice Fleming, David L. Young, Lane Powell PC, Seattle, WA, for Appellant.
Howard Mark Goodfriend, Valerie A. Villacin, Edwards, Sieh, Smith & Goodfriend, Seattle, WA, for Respondents.

PUBLISHED OPINION
AGID, J.
¶ 1 Westcott Homes LLC and Tyndall Ridge LLC ("Westcott") appeal the trial court's dismissal of their complaint against Michael and Cherie Chamness for failure to comply with the statutory notice requirements for initiating arbitration. Westcott contends that an email notice of its intent to initiate arbitration sent to the Chamnesses' attorney within the notice period substantially complied with the statutory notice requirements. Because the email notice did not describe the nature of the controversy and requested remedy as required by RCW 7.04A.090, we affirm.

FACTS
¶ 2 The Chamnesses own residential property in Lynnwood, Washington, and entered into a utility easement agreement with Joe Murphy in May 2004. The Chamnesses agreed to grant Murphy a utility easement across their backyard in exchange for $5,000. Murphy later assigned the easement to real estate developers Westcott.
¶ 3 In November 2005, employees of Westcott attempted to enter the Chamnesses' property to install a sewer line. The Chamnesses were unaware that Westcott had been assigned the easement and refused to allow them access to the property until they clarified the situation with Murphy. A dispute arose over the terms of the easement, and the Chamnesses demanded that Westcott pay an additional $150,000 to install the sewer line. Westcott then sued the Chamnesses, seeking to enforce the easement agreement and requesting damages resulting from any delay in installing the utilities.
¶ 4 The parties eventually agreed to settle the matter and Westcott agreed to pay an additional $5,000 to the Chamnesses in exchange for a modification of the easement, *396 which expanded Westcott's right of access. The revised utility easement also required Westcott to restore the property to its original condition after completing the installation. The parties entered into a CR 2A[1] agreement which required Westcott to deposit $5,000 into the court registry, to be released to the Chamnesses once the utilities were installed and upon entry of an order dismissing Westcott's complaint.
¶ 5 Westcott then began construction on the property, which involved relocating certain items on the property. The construction also caused damage to the Chamnesses' property, including their septic system. On June 7, 2006, Westcott told the Chamnesses that the work had been completed and asked them to sign an Acknowledgement of Satisfactory Restoration, which was required by the water district before it would record the easement. The Chamnesses refused to sign the acknowledgement and demanded that Westcott make the necessary repairs to restore their property. Westcott did not make the repairs, but filed a motion to enforce the CR 2A agreement and compel the Chamnesses to sign the acknowledgment. The court denied the motion.
¶ 6 The parties eventually entered into another agreement in which Westcott agreed to perform certain work on the property and in exchange, the Chamnesses agreed to sign the acknowledgement before the work was completed so the easement could be recorded. This agreement was formalized by a stipulation and secured by a confession of judgment. The stipulation required Westcott to restore the property by September 30, 2006 and in the event it did not do so, the Chamnesses could file the Confession of Judgment against Westcott in the amount of $10,000. But if the work was timely completed, the Confession of Judgment would be destroyed. The stipulation also provided that the parties reserved "all rights to seek damages for any alleged breach of the CR[]2A Agreement by initiating an arbitration proceeding within 180 days of execution of this stipulated judgment." The parties signed the stipulation on September 1, 2006. The Chamnesses also signed the acknowledgement at this time.
¶ 7 Westcott completed work on the property by the end of September 2006, and the action was dismissed on October 25, 2006. The Chamnesses also provided Westcott with a signed "Release for Work Performed" as required by the CR 2A agreement on December 11,2006.
¶ 8 The week after receiving the release, Westcott's attorney, David Young, contacted the Chamnesses' attorney, Michael Jacobs, to acknowledge receipt of the release. According to Young, he also asked Jacobs about "the ongoing contentions of the Chamnesses and any further proceedings," and Jacobs "related that the issue was up to the Developers." Jacobs also stated "that the Chamnesses would not seek any damages from the Developers and would cease any further legal proceedings, if the Developers would do the same," but that "if the Developers sought further action against the Chamnesses, they would seek damages from the Developers." Young then told Jacobs that he would consult with his client. Young also "related [to Jacobs] that if the parties proceeded to arbitration, that [he] suggested using an agreed local arbitrator," and Jacobs "suggested that sounded like a good idea." Young then told Jacobs that he "would offer some suggestion if our clients chose to proceed in arbitration."
¶ 9 On December 18, 2006, Jacobs filed a Notice of Intent to Withdraw effective January 2, 2007. The Notice advised that all future pleadings were to be sent directly to the Chamnesses at their home address. This address was provided in the notice.
¶ 10 On December 21, 2006, Young emailed the following message to Jacobs: Mike,
After presenting the issue to our client, Westcott is going to want to proceed to arbitrate the dispute between it and the Chamnesses. To that end, we offer the *397 following suggestions for an arbitrator of the dispute:
. . . .
Let us know if any of these individuals are acceptable to you. ... Otherwise, let's see if there is a time when we can talk on the phone to map out a few details and try to call to retain of [sic] the attorneys to act as arbitrator. I may be difficult to reach tomorrow, but will be around next week.
After receiving no response to this email, Young again emailed Jacobs on January 2, 2007, stating: "I never heard back from you on this issue. I presume that you may have simply missed it during the holidays. Let me know your thoughts so that we can proceed. Thanks." Jacobs then responded in an email on January 5, 2007, stating: "I have not heard back from Mr. and Mr. Chamness. As soon as I do I will let you know." On January 22, 2007, Jacobs sent another email to Young stating: "I do not have any information on Mr. and Mrs. Chamness' plans for arbitration. At this time I do not represent them so you may contact them directly."
¶ 11 On March 7, 2007, Westcott filed a "Complaint for Damages and Stay Pending Arbitration" in Snohomish County Superior Court. The Chamnesses moved to dismiss, contending that Westcott failed to timely initiate arbitration by February 28, 2007 because the email notice did not comply with the statutory notice requirements. The trial court granted the motion, finding that Westcott "failed to timely and properly initiate arbitration" and dismissing the claim with prejudice.

DISCUSSION
¶ 12 Westcott contends that the trial court erred by ruling that the email notice of its intent to arbitrate did not comply with RCW 7.04A.090's notice requirement that the notice be sent by certified or registered mail. Westcott argues that the email notice satisfied the statutory notice requirements under RCW 7.04A.020, which requires only "action that is reasonably necessary to inform the other person." Westcott further argues that even if the notice requirements under RCW 7.04A.090 apply, it complied with the statute by giving notice in the agreed manner between the parties and was therefore not required to send notice by certified mail. Finally, Westcott argues that it substantially complied with the notice requirements under RCW 7.04A.090 because the Chamnesses received actual notice of the email.

I. Applicable Statute

¶ 13 Westcott first relies on RCW 7.04A.020 to argue that the email notice was sufficient because that provision does not require notice by certified or registered mail. The Chamnesses contend that statute, which provides general notice requirements under the uniform arbitration act,[2] is superseded by the more specific statute, RCW 7.04A.090, which provides notice requirements for initiating arbitration. We agree.
¶ 14 "It is a basic rule of statutory construction that when there is a conflict between a statutory provision that treats a subject in a general way and another that treats the same subject in a specific way, the specific statute will prevail."[3] RCW 7.04A.090 addresses initiation of arbitration and provides:
A person initiates an arbitration proceeding by giving notice in a record to the other parties to the agreement to arbitrate in the agreed manner between the parties or, in the absence of agreement, by mail certified or registered, return receipt requested and obtained, or by service as authorized for the initiation of a civil action. The notice must describe the nature of the controversy and the remedy sought.
RCW 7.04A.020 provides:
Unless the parties to an agreement to arbitrate otherwise agree or except as otherwise provided in this chapter, a person gives notice to another person by taking action that is reasonably necessary to inform the other person in ordinary course, *398 whether or not the other person acquires knowledge of the notice. A person has notice if the person has knowledge of the notice or has received notice. A person receives notice when it comes to the person's attention or the notice is delivered at the person's place of residence or place of business, or at another location held out by the person as a place of delivery of such communications.[[4]]
¶ 15 Thus, by the plain language of both statutes, RCW 7.04A.090 governs the notice necessary to initiate arbitration. Indeed the comments to the Uniform Arbitration Act explicitly state that "[b]ecause of the language in Section 2 [RCW 7.04A.020] `except as otherwise provided by this [Act],' the manner of notice provided in Section 9(a) [RCW 7.04A.090] takes precedence as to notice of initiation of an arbitration proceeding."[5] We therefore determine whether the email notice complied with the notice requirements in RCW 7.04A.090.

II. Compliance with RCW 7.04A.090

¶ 16 Westcott contends that it complied with RCW 7.04A.090 because it gave notice in the "agreed manner between the parties." Alternatively, Westcott argues that the email notice substantially complied with RCW 7.04A.090 because the Chamnesses received actual notice. The Chamnesses respond that actual notice does not satisfy the notice requirements of RCW 7.04A.090.
¶ 17 If a statutory deadline is missed, courts may forgive the error if counsel has "substantially complied" with the applicable procedure.[6] The "substantial compliance" doctrine requires both actual notice and "service in a manner reasonably calculated to reach the party."[7] Belated compliance, or a failure to comply through inaction or inadvertence cannot constitute substantial compliance.[8]
¶ 18 Assuming without deciding that the email notice substantially complied with the statutory requirements for service of notice, we conclude that it still does not comply with the statutory requirements for content of the notice and affirm on that ground. RCW 7.04A.090 also provides that "[t]he notice must describe the nature of the controversy and the remedy sought." While the notice need not be a formal pleading, the statute does require that it include this specific information. Here, the December 21 email simply stated that "Westcott is going to want to proceed to arbitrate the dispute between it and the Chamnesses," but does not otherwise describe the nature of the dispute or mention the remedy sought. Even though it is likely both parties and their attorneys knew both the nature of the dispute and that Westcott sought damages, the email notice must still comply with the statutory notice requirements. It did not, so we affirm the trial court's order of dismissal.

III. Attorney Fees

¶ 19 The Chamnesses request attorney fees under RAP 18.9(a) and the CR 2A agreement. Westcott does not contest this request or otherwise address this issue. The CR 2A agreement provides:
In case of default of any term of this settlement agreement OR of the terms of any document executed pursuant to this agreement, the prevailing party shall be entitled to seek injunctive relief together with damages as proven in court together with reasonable attorney's fees and costs including post-judgment attorney's fees and costs.
The arbitration clause in the stipulation also refers to breach of the CR 2A agreement. The subject of this appeal is the trial court's dismissal of Westcott's complaint alleging that the Chamnesses breached the CR 2A *399 agreement.[9] Thus, the attorney fees provision applies and we award attorney fees to the Chamnesses as the prevailing party.
¶ 20 We affirm the trial court's order of dismissal.
WE CONCUR: ELLINGTON and COX, JJ.
NOTES
[1] CR 2A governs stipulations and provides:

No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.
[2] Chapter 7.04A RCW.
[3] Gossage v. State, 112 Wash.App. 412, 420, 49 P.3d 927 (2002). review denied, 148 Wash.2d 1012, 62 P.3d 890, cert. denied, 540 U.S. 923, 124 S.Ct. 324, 157 L.Ed.2d 222 (2003).
[4] (Emphasis added.)
[5] Unif. Arb. Act (2000) § 2 cmt. 3, 7 U.L.A. 13 (2005) (third alteration in original).
[6] 15A KARL B. TEGLAND & DOUGLAS J. ENDE, WASHINGTON PRACTICE: WASHINGTON HANDBOOK ON CIVIL PROCEDURE § 6.12, at 129 (2007-08).
[7] Chai v. Kong, 122 Wash.App. 247, 253, 93 P.3d 936 (2004).
[8] Petta v. Dep't of Labor & Indus., 68 Wash.App. 406, 842 P.2d 1006 (1992), review denied, 121 Wash.2d 1012, 852 P.2d 1091 (1993).
[9] Westcott's Complaint for Damages and Stay Pending Arbitration states: Breach of Contract. After construction of the sewer main, defendants asserted that plaintiffs' workmanship was improper. During this period, defendants refused to execute documentation necessary for the recording of the modified easement previously executed by the defendants. Plaintiffs maintained the defendants' refusal to execute the documentation constituted a breach of contract and caused damages to plaintiffs. The parties subsequently entered into a modification of their agreement that provided for execution of the documentation at issue and through which plaintiffs reserved rights to seek damages from defendants' breach of the agreement.