[No. 82687-1. En Banc.]
Argued June 24, 2010. Decided November 10, 2010.

HUMPHREY INDUSTRIES, LTD., *Petitioner*, v. CLAY STREET
ASSOCIATES, LLC, ET AL., *Respondents*.

*David C. Spellman* and *Stanton P. Beck* (of *Lane Powell PC*), for petitioner.

*Gregory J. Hollon* and *Barbara H. Schuknecht* (of *McNaul Ebel Nawrot & Helgren*); and *Alan B. Bornstein* (of *Jameson Babbit Stites & Lombard PLLC*), for respondents.

¶1 J.M. JOHNSON, J. — Humphrey Industries Ltd. by means of its principal, George Humphrey (collectively Humphrey), and with business partners Joseph and Ann Lee Rogel, Scott Rogel, and ABO Investments, by means of its principal, Gerald Ostroff, created Clay Street Associates LLC (Clay Street) to hold a single real estate asset located in Auburn, Washington. In order to break a deadlock with Humphrey regarding the sale of the property in late 2004, the other members of Clay Street agreed to merge the company into a new limited liability company with a different voting structure that could facilitate the sale. Humphrey dissented from the merger and demanded payment pursuant to the dissenters' rights provisions of the Washington Limited Liability Company Act (LLC Act or the Act), chapter 25.15 RCW. As required by the Act, Clay Street paid Humphrey what Clay Street calculated as the fair market value of Humphrey's interest in Clay Street as of the effective merger date in December 2004; however, Clay Street did not pay until the property sold in May 2005.

¶2 Humphrey rejected Clay Street's value calculation and filed suit. Clay Street subsequently filed a petition for

judicial determination of the property's value as of the effective merger date. The trial court consolidated the actions and heard testimony over several days in June 2007. It found that the property was worth more as of the merger date than Clay Street had calculated and accordingly awarded Humphrey the difference plus interest. However, the court also awarded Clay Street and the Rogels attorney fees based on its finding that Humphrey had acted arbitrarily, vexatiously, and not in good faith in pursuing the litigation. Humphrey appealed, and the Court of Appeals affirmed in an unpublished opinion. *Humphrey Indus., Ltd. v. Clay St. Assocs., LLC*, noted at 147 Wn. App. 1045 (2008). Humphrey then petitioned this court for review. *Humphrey Indus., Ltd. v. Clay St. Assocs., LLC*, 166 Wn.2d 1014, 210 P.3d 1019 (2009). We reverse the Court of Appeals and remand for reconsideration of the attorney fee award.

FACTS AND PROCEDURAL HISTORY

¶3 Humphrey, Scott Rogel, Joseph and Ann Lee Rogel, and ABO Investments formed Clay Street in May 1997 to purchase and manage a single parcel of real property located in Auburn, Washington. Clay Street's "LLC Agreement" specified that the property "shall not be sold, conveyed, and/or assigned without the mutual consent of each of the members . . . ." Clerk's Papers (CP) at 54. The LLC Agreement also provided for binding arbitration should a controversy or dispute related to the company's business arise.

¶4 Such a dispute occurred in 2004 when Scott Rogel, in order to implement a property settlement reached during his divorce, sought to sell the property and dissolve Clay Street. Humphrey refused to consent to the sale, and the other members of Clay Street sought the advice of an attorney as to how they might circumvent the unanimity requirement of the LLC Agreement and sell the property notwithstanding Humphrey's veto. The attorney advised

them that, since further negotiations were futile, the sale could "be accomplished most quickly through a merger procedure which eliminates the dissenting vote." CP at 62.

¶5 Pursuant to this suggestion, the remaining members of Clay Street formed a new limited liability company in August 2004 and merged it with Clay Street. The members gave Humphrey notice of its statutory right to dissent to the merger, and Humphrey exercised this right on October 1, 2004, demanding payment of the fair value of its interest in the company. The merger became effective on December 7, 2004.

¶6 Because it had not yet sold the property and had no other assets, Clay Street lacked funds with which to pay Humphrey the fair value of its interest within 30 days of the effective merger date, as required by statute. Later, on May 27, 2005, Clay Street paid Humphrey $181,192.64—which it calculated to be the fair value of Humphrey's interest as of the merger date, plus interest for the delay—following the sale of the property earlier that month for $3.3 million. Humphrey immediately disputed the value calculated by Clay Street and demanded an additional $424,607.00 based on its own estimate of fair value. Clay Street refused to pay the additional sum and Humphrey filed suit on June 21, 2005. One month later, Clay Street offered to settle Humphrey's claims for $325,376.00. Humphrey rejected the offer. Clay Street subsequently filed a formal petition to determine the fair value of the company; the two cases were consolidated to resolve that issue and those raised by Humphrey in its derivative suit. In another effort to resolve the litigation, Clay Street made a CR 68 offer of judgment for an additional $165,275.59 in September 2006,[1] but Humphrey refused that offer as well.

---

[1] This, combined with the $181,192.64 that Humphrey had already received, would have resulted in Clay Street paying Humphrey a total of $346,468.23.

¶7 After several delays,[2] a six-day bench trial was held in June 2007.[3] The court heard evidence from several different appraisers and experts, along with testimony from Clay Street members Scott Rogel, George Humphrey, and Gerald Ostroff.[4] The court found that the pattern and magnitude of offers made for the property "did not indicate a distressed, forced or fire sale" and that the final sale price reflected the fair value of Clay Street as of May 2005.[5] CP at 1667. The court deemed this price to be highly relevant to the fair value of the company five months earlier and accordingly adopted as the most accurate measure of Clay Street's value as of December 7, 2004, the $3.15 million valuation of the only appraiser who had considered it. The court ordered Clay Street to pay Humphrey an additional $60,588.22 based on this valuation.[6]

¶8 The trial court also found that Clay Street violated the LLC Act by failing to pay Humphrey the fair value of its interest within 30 days of the effective merger date as required by RCW 25.15.460. Nevertheless, it concluded that Clay Street had substantially complied with the Act "given that [it] lacked any funds to make the payment to Humphrey, that it could not obtain the requisite funds

---

[2] These included the untimely death of the initial court-appointed appraiser, Bruce Allen, and the replacement of the original trial judge, Judge Michael Hayden, with Judge Harry J. McCarthy, following the former judge's reassignment to the criminal calendar.

[3] Several attempts at arbitration had failed by this point.

[4] The valuations of Clay Street examined at trial ranged from $2.5 to $4.1 million, depending on the party conducting the valuation, the method used, and date of the estimate. Only Humphrey's valuation exceeded $4 million; all others were well below that figure.

[5] In making these determinations, the court specifically found the testimony of Gerald Ostroff to be credible. It also found that the opinions of George Humphrey were "not entitled to the same weight" as those of the professional appraisers who evaluated the property because (i) he was not an expert witness and (ii) "the evidence used in his valuation appears to be well outside of the mainstream of reasonably based valuations in this case." CP at 1674-75.

[6] Using the $3.15 million valuation, the court determined that the fair value of Humphrey's 25 percent interest in the company was $231,947.17 on the effective merger date; to this it added $9,833.69 of interest and subtracted the $181,192.64 already paid to calculate the new amount owed.

without a sale of the property, and that it was willing to pay the statutorily required interest during the period of delay." CP at 2315. The court also declined to award Humphrey attorney fees as provided under RCW 25.15.480(2)(a)[7] and instead awarded fees and expenses to Clay Street and Joseph and Ann Lee Rogel under subsection (b) of the same provision based on its finding that Humphrey acted arbitrarily, vexatiously, and not in good faith in pursuing its dissenter's rights claim.

¶9 The Court of Appeals affirmed the trial court's determination of fair value and interest and its attorney fee award. *Humphrey Indus., Ltd.*, noted at 147 Wn. App. 1045. Humphrey subsequently petitioned this court for review of the latter issue, which we granted. *Humphrey Indus., Ltd.*, 166 Wn.2d 1014. In its petition, Humphrey objects first to the Court of Appeals' determination that Clay Street substantially complied with the statutory deadline for payment of fair value set by RCW 25.15.460 and, second, to the court's finding that Humphrey acted arbitrarily, vexatiously, and not in good faith. Together, these findings formed the basis for the court's award of fees and expenses to Clay Street and the Rogels and its refusal to award the same to Humphrey. We limit our review to these two concerns pursuant to RAP 13.7(b) and do not address the issue of fair value, which Humphrey did not raise in its petition.

ANALYSIS

¶10 Whether a party substantially complied with a statute is a mixed question of law and fact, which we review

---

[7] RCW 25.15.480(2) reads, in full:

The court may also assess the fees and expenses of counsel and experts for the respective parties, in amounts the court finds equitable:

(a) Against the limited liability company and in favor of any or all dissenters if the court finds the limited liability company did not substantially comply with the requirements of this article; or

(b) Against either the limited liability company or a dissenter, in favor of any other party, if the court finds that the party against whom the fees and expenses are assessed acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by this article.

de novo. *State v. Dearbone*, 125 Wn.2d 173, 178, 883 P.2d 303 (1994). We review attorney fee awards for abuse of discretion. *Noble v. Safe Harbor Family Pres. Trust*, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009).

## I. Substantial Compliance with RCW 25.15.460

¶11 Upon timely receipt of a demand for payment from a member who dissents from a proposed merger, a limited liability company must pay the member the fair value of the member's interest in the company. The time and manner in which this payment is to be tendered is governed by RCW 25.15.460, which reads:

> (1) Within thirty days of the later of the date the proposed merger becomes effective, or the payment demand is received, the limited liability company shall pay each dissenter who complied with RCW 25.15.450 the amount the limited liability company estimates to be the fair value of the dissenting member's interest in the limited liability company, plus accrued interest.
>
> (2) The payment must be accompanied by:
>
> (a) Copies of the financial statements for the limited liability company for its most recent fiscal year;
>
> (b) An explanation of how the limited liability company estimated the fair value of the member's interest in the limited liability company;
>
> (c) An explanation of how the accrued interest was calculated;
>
> (d) A statement of the dissenter's right to demand payment; and
>
> (e) A copy of this article.

The dissenter can notify the company in writing of the dissenter's own estimate of the fair value of the dissenter's interest and demand payment of that estimate if (i) the company fails to make payment within 60 days after the date set for demanding payment or (ii) the dissenter believes that the amount paid is less than the fair value of the dissenter's interest. *See* RCW 25.15.470.

¶12 As mentioned above, both the trial court and the Court of Appeals found that Clay Street "substantially complied" with the directives contained in RCW 25.15.460, despite its failure to tender payment within 30 days of the effective merger date as required by statute—that date being the later of the two dates listed in RCW 25.15.460(1).

¶13 Humphrey contends that the lower courts erred by finding that Clay Street substantially complied with the statute. It argues that substantial compliance with a statutory deadline, including a specified time such as that contained in RCW 25.15.460, is impossible—one either complies with it or not. *See* Pet. for Review at 9 (citing *City of Seattle v. Pub. Emp't Relations Comm'n*, 116 Wn.2d 923, 928-29, 809 P.2d 1377 (1991); *Westcott Homes, LLC v. Chamness*, 146 Wn. App. 728, 735, 192 P.3d 394 (2008); *Petta v. Dep't of Labor & Indus.*, 68 Wn. App. 406, 409-10, 842 P.2d 1006 (1992)). Since Clay Street concedes that it did not tender payment of the fair value of Humphrey's interest within the 30 day statutory window, Humphrey claims that Clay Street could not have substantially complied with RCW 25.15.460 and that the trial court's finding, as affirmed by the Court of Appeals, is therefore in error.

¶14 Clay Street counters by arguing that "substantial compliance" deserves a broader interpretation where timeliness is not a jurisdictional requirement. *See* Answer to Pet. for Review at 9-10 (citing *In re Habeas Corpus of Santore*, 28 Wn. App. 319, 327, 623 P.2d 702 (1981); BLACK'S LAW DICTIONARY 1470 (8th ed. 2004)). Under such a reading, "substantial compliance" does not connote flawless compliance but rather " 'actual compliance in respect to the substance essential to every reasonable objective of the statute.' " *Id.* at 10 (quoting *Santore*, 28 Wn. App. at 327). Clay Street argues that the factual circumstances of each case are relevant when applying this standard and that the lower courts' finding that it substantially complied with the statute was proper, based as it was on the facts—namely, Clay Street's financial inability to tender payment by the

deadline and its speedy delivery of the funds as soon as they were available.[8] *Id.* at 10-11.

¶15 Humphrey's argument is more persuasive. A party substantially complies with a statutory directive when it satisfies the substance essential to the purpose of the statute. *See Crosby v. Spokane County*, 137 Wn.2d 296, 302, 971 P.2d 32 (1999) (citing *Cont'l Sports Corp. v. Dep't of Labor & Indus.*, 128 Wn.2d 594, 602, 910 P.2d 1284 (1996)). As Clay Street correctly observes, this requires "actual compliance in respect to the substance essential to the statute's reasonable objectives," such that "the purpose of the [statutory] requirement is generally satisfied." *In re Det. of A.S.*, 138 Wn.2d 898, 927, 982 P.2d 1156 (1999) (citing *Crosby*, 137 Wn.2d at 302, 303). The party attempting to comply with the statute must "make a 'bona fide attempt to comply with the law' and . . . 'must actually accomplish its purpose.'" *Renner v. City of Marysville*, 168 Wn.2d 540, 545, 230 P.3d 569 (2010) (quoting *Brigham v. City of Seattle*, 34 Wn.2d 786, 789, 210 P.2d 144 (1949)).

¶16 The purpose of RCW 25.15.460 is to ensure that dissenters "have immediate use of the money to which the corporation agrees it has no further claim." 2 SENATE JOURNAL, 51st Leg., Reg. Sess., at 3091 (Wash. 1989) (quoting app. A cmts. to Washington Business Corporation Act § 13.25).[9]

---

[8] The dissent suggests that the practical realities of marketing real estate and the fact that Clay Street had only one asset should play a role in our analysis. *See* dissent at 510. Clay Street should have taken these factors into consideration in deciding whether its merger procedure could actually effect the purpose intended by its controlling members. If it could not (and it did not), an appropriate course of action on Scott Rogel's part may have been to ask the court approving the property settlement agreement for an extension of time or to find a substitute for the deadlocked real estate asset.

[9] The national Model Business Corporation Act (Model Act), upon which the Washington Business Corporation Act (WBCA), Title 23B RCW, is largely based, was last revised in 1984. Five years later, the Washington Legislature substantially revised the WBCA to incorporate many of the 1984 Model Act revisions. *See* LAWS OF 1989, ch. 165; *Ballard Square Condo. Owners Ass'n v. Dynasty Constr. Co.*, 158 Wn.2d 603, 620-21, 146 P.3d 914 (2006) (J.M. Johnson, J., concurring); *Equipto Div. Aurora Equip. Co. v. Yarmouth*, 134 Wn.2d 356, 361, 950 P.2d 451 (1998). Although the legislature did not officially adopt the comments to the 1984 Model Act, they are published in the *Senate Journal* and may be used as persuasive authority. *See Ballard*, 158 Wn.2d at 623 (J.M. Johnson, J., concurring). The full

Humphrey's rights as a member of Clay Street terminated on December 7, 2004, the effective merger date. In order to effectuate the purpose of RCW 25.15.460, Humphrey should have had immediate use of the fair value of its interest in the company—i.e., it should have received the money within 30 days of the merger date. Humphrey did not receive payment within that time frame; instead, Clay Street sent the funds almost six months later. It cannot be said that Clay Street "actually accomplish[ed]," *Brigham*, 34 Wn.2d at 789, or "generally satisfied," *A.S.*, 138 Wn.2d at 927, the purpose of RCW 25.15.460 by means of this delayed payment. *Accord Pub. Emp't Relations Comm'n*, 116 Wn.2d at 928-29 ("It is impossible to substantially comply with a statutory time limit . . . . It is either complied with or it is not."). Clay Street therefore did not substantially comply with the statutory deadline, and we reverse the Court of Appeals insofar as it held otherwise.[10]

¶17 Further, as Clay Street itself concedes in its briefing, " '[w]hat constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.' " Answer to Pet. for Review at 10 (quoting *Santore*, 28 Wn.

---

text of the comment relevant to RCW 25.15.460 reads, "This obligation to make immediate payment is based on the view that since the person's rights as a shareholder are terminated with the completion of the transaction, the shareholder should have immediate use of the money to which the corporation agrees it has no further claim. A difference of opinion over the total amount to be paid should not delay payment of the amount that is undisputed." 2 SENATE JOURNAL at 3091.

[10] The dissent's interpretation of our holding misapprehends the impact of RCW 25.15.480(2), which controls our analysis here. Dissent at 509-10. RCW 25.15.480(2)(a) states:

The court may also assess the fees and expenses of counsel and experts . . .

. . . [a]gainst the limited liability company and in favor of any or all dissenters if the court finds the limited liability company did not substantially comply with the requirements of *this article*.

(Emphasis added.) *"This article"* refers to Article XII of chapter 25.15 RCW, which is entitled "DISSENTERS' RIGHTS." Article XII consists of RCW 25.15.425 through RCW 25.15.480. Within Article XII, there are both "time-sensitive" components that must be complied with, such as RCW 25.15.460(1), and "time-sensitive" components that do not depend on time. The phrase "substantially comply" refers to Article XII as a whole and contemplates strict compliance with time requirements while allowing for substantial compliance with other aspects of the title. If the legislature had intended otherwise here, it might have said "thirty days or a reasonable time" instead of "thirty days." *See* RCW 25.15.460(1).

App. at 327). The relevant facts of this particular case, as summarized above, indicate that Clay Street did not substantially comply with RCW 25.15.460 and its purpose; Humphrey did not have anything close to "immediate" use of the $181,192.64 even though Clay Street agrees it had no further claim to that sum after the merger. As a result, we reverse the Court of Appeals' finding that Clay Street substantially complied with RCW 25.15.460 notwithstanding its delayed payment of fair value to Humphrey.[11] A six-month deferral of payment is not "substantial compliance" with a statute that unambiguously requires payment "within thirty days."

## II. Attorney Fees

 ¶18 We review attorney fee awards made pursuant to statutes, such as RCW 25.15.480, for abuse of discretion. *Noble*, 167 Wn.2d at 17; *Morgan v. Kingen*, 166 Wn.2d 526, 539, 210 P.3d 995 (2009); *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 375, 798 P.2d 799 (1990). We reverse a trial court's decision under this standard only if it "is manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons," with the last category including errors of law. *Noble*, 167 Wn.2d at 17.

 ¶19 As previously noted, *see supra* note 7, the LLC Act authorizes an award of attorney and expert fees (a) against the limited liability company if the court finds that it failed to substantially comply with the Act or (b) against either party if the court finds that party to have acted arbitrarily, vexatiously, or not in good faith. *See* RCW 25.15.480(2). Humphrey claims that it is entitled to attorney fees under the former subsection; Clay Street counters

---

[11] The dissent acknowledges that the legislature "clearly wanted to protect dissenters' rights and assure prompt payment," dissent at 511, but argues that "the legislature was also mindful that 30 days is a very short time frame in which to accomplish a merger [and] [t]here is nothing in the statute to suggest that the legislature intended to . . . forc[e] a fire sale at a very unfavorable price." *Id.* It is likely that the legislature chose 30 days assuming that merging business entities would have the prudence and good faith to lay the groundwork for selling property well before a merger became effective, or seek other financing, so as to meet the statutory requirement.

that it is entitled to the same under the latter, as both the trial court and the Court of Appeals ruled. Importantly, though, the award of attorney fees under RCW 25.15.480(2) is not mandatory. *Id.* ("The court *may* also assess the fees and expenses of counsel . . . ." (emphasis added)). Thus, even if Clay Street *did* fail to substantially comply with the 30 day statutory deadline, or if Humphrey *did* act arbitrarily, vexatiously, or not in good faith, the opposing party is not automatically *entitled* to an award of attorney fees. Rather, the decision to award attorney fees rests in the discretion of the trial court.

¶20 Here, the trial court found that Clay Street substantially complied with the LLC Act notwithstanding the extreme delay of its payment to Humphrey—a delay that unquestionably violated the 30 day statutory deadline. It refused to grant Humphrey attorney fees on this basis. The court also found that Humphrey acted arbitrarily, vexatiously, and not in good faith in pursuing the litigation and, as a result, awarded attorney and expert fees to Clay Street and the Rogels. The Court of Appeals affirmed on both issues. We reverse the Court of Appeals and remand for reconsideration of the denial of such fees to Humphrey.

¶21 We hold today that the conclusion that Clay Street substantially complied with the Act is erroneous. Clay Street did not do so, and both the trial court and the Court of Appeals committed an error of law by so concluding. Under *Noble*, we reverse attorney fee decisions that are based on "untenable reasons," a category that "include[s] errors of law." *Noble*, 167 Wn.2d at 17. Accordingly, we reverse the Court of Appeals' decision affirming the trial court's denial of attorney fees to Humphrey, based as it was on the erroneous legal conclusion that Clay Street substantially complied with RCW 25.15.460. We remand for further proceedings to determine whether, given Clay Street's failure to substantially comply with the LLC Act, an award of fees to Humphrey is appropriate.

¶22 Reversal of the attorney fee award in favor of Clay Street and the Rogels is also warranted. That award was

based on the trial court's finding that Humphrey acted arbitrarily, vexatiously, and not in good faith, a finding that rested in part on Humphrey's rejection of a pretrial settlement offer and a CR 68 offer of judgment. Evidence of conduct in settlement negotiations, however, is inadmissible to prove liability for or invalidity of the claim or its amount. The trial court should not have relied on Humphrey's prelitigation conduct or conduct in other suits against Clay Street and the Rogels in awarding fees against Humphrey.

¶23 While the dissent notes that such evidence may be admitted if offered for other purposes (ER 408), evidence of Humphrey's rejection of a pretrial offer was not properly admitted. Dissent at 512-13. The record supports the conclusion: the trial court specifically referred to the offers as a "substantial windfall." CP at 2324. This is a direct comment on the validity of the claim or its amount.

¶24 Even if the evidence was admitted for a permissible purpose, given the circumstances of this case, the record does not establish that Humphrey's actions were arbitrary, vexatious, and not in good faith. If any acts were in bad faith, they were committed by the other members of Clay Street, who sought to bypass the dissenters' rights statute and section 8.1 of their own LLC Agreement, which specifies that the property "shall not be sold, conveyed, and/or assigned without the mutual consent of each of the members . . . ." CP at 54.

¶25 We reverse the trial court's award of attorney fees against Humphrey and in favor of the other parties, based as it was on "untenable grounds." *Noble*, 167 Wn.2d at 17. We remand for consideration of whether, in light of Clay Street's failure to substantially comply with the statute, Humphrey is entitled to attorney fees.

CONCLUSION

¶26 Clay Street plainly failed to pay Humphrey the fair value of its interest in the company within 30 days of the

effective merger date as required by RCW 25.15.460. Instead, it partially paid that value six months later. Humphrey was thereby deprived of the immediate use of the fair value of its interest, contrary to the underlying purpose of the dissenters' rights statute. It follows that Clay Street did not substantially comply with the statute. We reverse the Court of Appeals' conclusion to the contrary and, in light of that reversal, remand for a determination of whether Humphrey is entitled to attorney fees under RCW 25.15.480. As the prevailing party, Humphrey is entitled to attorney fees for this appeal.

MADSEN, C.J., and ALEXANDER, SANDERS, and STEPHENS, JJ., concur.

¶27 CHAMBERS, J. (dissenting) — I find the majority's resolution puzzling. The statute controlling dissenters' rights contemplates that those rights may be satisfied by substantial compliance. In fact, the statute specifically authorizes a substantial compliance inquiry. RCW 25.15-.480.[12] Notwithstanding this clear directive from the legislature, the majority concludes that the statutory requirement that payment to the dissenter be tendered within 30 days can be satisfied only by strict compliance. Majority at 503. That is the puzzling part. The majority ignores the trial

---

[12] (1) . . . The court shall assess the *costs* against the limited liability company, except that the court may assess the costs against all or some of the dissenters, in amounts the court finds equitable, to the extent the court finds the dissenters acted arbitrarily, vexatiously, or not in good faith in demanding payment.

(2) The court may also assess the fees and expenses of counsel and experts for the respective parties, in amounts the court finds equitable:

(a) Against the limited liability company and in favor of any or all dissenters *if the court finds the limited liability company did not substantially comply with the requirements of this article*; or

(b) Against either the limited liability company or a dissenter, in favor of any other party, if the court finds that the party against whom the fees and expenses are assessed acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by this article.

RCW 25.15.480 (emphasis added).

court's careful findings of substantial compliance and flouts the legislature's clear directive that only substantial compliance is required. The majority is wrong. I respectfully dissent.

¶28 Although the parties had other business relations, relevant here is that Humphrey Industries Ltd., by means of its principal, George Humphrey (Humphrey), joined Joseph and Ann Lee Rogel, Scott Rogel, and ABO Investments, by means of its principal, Gerald Ostroff, to create Clay Street Associates LLC for the purpose of acquiring and managing real estate. Importantly, the company purchased and owned only one piece of real estate. One of the Rogels decided to divorce and sought to liquidate his interest. Humphrey refused. Following a statutorily permissible merger procedure, the Rogels and Ostroff formed WXYZ LLC. Humphrey was given notice of his dissenter's rights, formally dissented, and on October 1, 2004, demanded payment for his interest. Under the statutory scheme, Humphrey was entitled to payment within 30 days of his demand. The problem was that the single asset of the company, a commercial warehouse, could not be marketed so quickly. The parties disagreed on values; the relationship between Humphrey and the other investors became acrimonious, and numerous legal actions followed.

¶29 Ultimately, a trial judge determined the value of the property as of the date of merger to be $3.15 million, with Humphrey's share to be $231,947 plus interest of $9,833, and offset by the $181,192 he had already been paid. The trial court also found that the remaining investors had substantially complied with the statutory requirements of the merger procedure and that Humphrey had acted arbitrarily, vexatiously, and not in good faith, and thus assessed attorney fees against Humphrey.

¶30 First, under the plain words of the statute, courts are required to conduct a substantial compliance inquiry in awarding attorney fees for dissenters' rights disputes. RCW 25.15.480. The inquiry "depend[s] on the facts of each particular case," and the facts of this case support the

conclusion that Clay Street "generally . . . satisfied" the purpose of the requirement. *In re Habeas Corpus of Santore*, 28 Wn. App. 319, 327, 623 P.2d 702 (1981); *Crosby v. Spokane County*, 137 Wn.2d 296, 303, 971 P.2d 32 (1999) (finding substantial compliance with a statutory requirement where "generally the purpose of the requirement will be satisfied"). While the legislature clearly wanted to protect dissenters' rights and assure prompt payment, the legislature was also mindful that 30 days is a very short time frame in which to accomplish a merger and the often resulting requirements of accounting, apportionment, appraisal, sale, settlement, and other potential steps in the transfer of property, assets, debts, and liabilities associated with the process. There is nothing in the statute to suggest that the legislature intended to punish the remaining investors in a single asset by forcing a fire sale at a very unfavorable price.[13] Instead, the legislature provided for the escape valve of "substantial compliance." As described by the Court of Appeals, Washington courts have defined "substantial compliance" as " ' "actual compliance in respect to the substance essential to every reasonable objective of [a] statute." ' " *Humphry Indus. Ltd. v. Clay St. Assocs. LLC*, noted at 147 Wn. App. 1045, 2008 WL 5182026, at \*4, 2008 Wash. App. LEXIS 2856, at \*10 (alteration in original) (quoting *City of Seattle v. Pub. Emp't Relations Comm'n*, 116 Wn.2d 923, 928, 809 P.2d 1377 (1991) (quoting *Santore*, 28 Wn. App. at 327)).

¶31 Second, the statute contemplates a dispute resolution process that would take the parties far beyond the 30-day payment window. RCW 25.15.475(1).

¶32 Third, we have held that under this statute, the attorney fees are permissive, not mandatory. *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 28, 978 P.2d 481 (1999) ("the term 'may' in a statute has a permissive or

---

[13] Given the realities of securing financing and the attendant appraisals and review of ecological, zoning, floodplain, insurance, and other related matters, 30 days is not a practical time limit for any transaction requiring the sale of commercial real estate.

discretionary meaning" (citing *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 381, 858 P.2d 245 (1993))). Given the facts of this case and the discretion vested in the trial judge's hands by this statute, the trial court did not err in refusing to award attorney fees to Humphrey. According to the trial court's findings, the merger resulted from Humphrey's unwillingness to liquidate a dysfunctional enterprise, and Clay Street paid out as soon as it obtained the money, with interest. Furthermore, Clay Street attempted to avoid litigation by making an offer well in excess of the eventual judgment, which Humphrey refused.

¶33 The courts below had sufficient ground to find that Clay Street substantially complied with the statute, and I would thus affirm their denial of Humphrey's request for attorney fees.

¶34 Finally, the majority concludes that, in finding that Humphrey acted arbitrarily, vexatiously, or not in good faith, the courts below improperly considered Humphrey's rejection of a prelitigation offer well in excess of the eventual judgment. Majority at 508 (citing ER 408). By its very terms, however, the rule cited does not exclude evidence of conduct in settlement negotiations if offered for a purpose other than proving or denying liability.[14] Here, the evidence was properly admitted as relevant to state of mind. *Bulaich v. AT&T Info. Sys.*, 113 Wn.2d 254, 263-64, 778 P.2d 1031 (1989) (allowing admission of prelitigation negotiations for the purpose of establishing intent). In fact,

---

[14] In a civil case, evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible *to prove liability for or invalidity of the claim or its amount.* Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. *This rule also does not require exclusion when the evidence is offered for another purpose,* such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

ER 408 (emphasis added).

this court has specifically approved the use of such evidence to show good faith. *Matteson v. Ziebarth*, 40 Wn.2d 286, 294, 242 P.2d 1025 (1952). Excluding evidence so clearly relevant to lack of good faith would defeat the express purpose of giving the courts discretion to award attorney fees under the dissenters' rights statute, namely, to encourage good faith efforts to settle disputes out of court. *See* 2 SENATE JOURNAL, 51st Leg., Reg. Sess., at 3092-93 (Wash. 1989) (quoting app. A cmts. to Washington Business Corporation Act §§ 13.28, .31).

¶35 In sum, I would affirm the Court of Appeals in all respects.

C. JOHNSON, OWENS, and FAIRHURST, JJ., concur with CHAMBERS, J.

Reconsideration denied March 8, 2011.