IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| SENTINELC3, INC., a Washington Corporation, | ) ) ) | No. 30553-8-III consolidated with 30592-9-III; 30837-5-III; 30881-2-III |
| Respondent, | ) ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| CHRIS J. HUNT, an individual and the marital community, if any, comprised of CHRIS J. HUNT and CARMEN HUNT; MICHAEL BLOOD, an individual and the marital community, if any, comprised of MICHAEL BLOOD and JANAE BLOOD, | ) ) ) ) ) ) ) ) ) ) | |
| Appellants. | ) ) | |

KORSMO, C.J. — Dissenting shareholders appeal from rulings at summary judgment that valued their shares in accordance with the corporation's offer and imposed penalties and attorney fees for intransigence. We reverse and remand for further proceedings.

FACTS

SentinelC3 (Sentinel) is a closely held corporation that facilitates transactions between health care providers and medical equipment suppliers. It began in 2003 as an

Idaho corporation, but became a Washington corporation in 2010. Its activities that year triggered the actions that resulted in this appeal.

At that time, the biggest single shareholder in the corporation was Chris Hunt with 1,000,000 shares, approximately 22 percent of the corporation's 4,500,000 total shares. Four members of the Owens family owned 3,000,000 shares, while Michael Blood and Ken Moore each owned 250,000 shares (approximately 5.5 percent). Sentinel attempted to buy out Mr. Hunt that April. Its expert, James Kukull, using the corporation's value on December 31, 2009, valued the shares at $107,200 when using a "minority, nonmarketable basis" or at $195,200 on a "control, marketable basis." Mr. Kukull explained that a "control, marketable basis" valuation was the same as "fair value" under the dissenters' rights statute. The company offered the lower value; Mr. Hunt declined to sell.

On October 8, 2010, the company became a Washington corporation. At the same time, it proposed a reverse stock split of 1.5 million to one; those with less than one new share were required to sell their stock. The shareholders voted 5 to 2, with Mr. Hunt and

2

Mr. Blood[1] dissenting, to adopt the reverse stock split on October 28, 2010. After forcing out the two dissenters, the remaining shareholders instituted a forward stock split that issued them the same number of shares of the new stock as they used to own.

Sentinel paid Mr. Hunt $195,200.00 plus interest in accordance with the greater valuation Mr. Kukull had previously made and paid Mr. Blood $48,956.60 plus interest. Both Hunt and Blood believed Mr. Kukull's valuation to be out of date. Each made counteroffers to Sentinel based on a valuation from an undisclosed professional, subsequently determined to be C&H Group.[2] Hunt revised his valuation upwards 20 percent based on the belief that a buy-out of Sentinel was imminent. Blood's valuation was revised upwards based on his view that there were only approximately 3,000,000 shares of Sentinel (rather than the original 4,500,000 shares) because of an alleged agreement for the company to buy the stock of some of the other shareholders. Kukull expressed the view that because of falling earnings before taxes, Sentinel's value had not significantly changed since his original valuation despite an increase in sales.

---

[1] Although both the Blood and Hunt marital communities are parties to this action, we will refer to them in the singular for convenience.

[2] Both men declined to produce the documents supporting the new valuation on the basis that C&H was only a consulting expert.

No. 30553-8-III consolidated with 30592-9-III;
30837-5-III; 30881-2-III
SentinelC3 v. Hunt

Sentinel instituted an action January 31, 2011, in the Spokane County Superior

Court to establish the fair value of the dissenting shares in accordance with RCW

23B.13.300. Discovery ensued; Mr. Hunt requested that Sentinel provide business

records, contracts, and marketing plans going back five years. Sentinel objected on the

basis that the records were irrelevant to the valuation process, but agreed to disclose if a

protective order could be worked out.[3] Sentinel filed a proposed protective order on

August 5, 2011, and filed a motion for summary judgment four days later. The trial court

granted the protective order on September 7. A few weeks later Hunt disclosed Jerry

Hecker as his expert witness and also filed an answer to the summary judgment motion.[4]

Counsel for Mr. Hunt filed a declaration on October 18, 2011, with Mr. Hecker's

valuation report attached; Mr. Hecker, however, had not certified his report.

The trial court heard the summary judgment motion on October 21. The court

found that Hecker's valuation was not admissible through counsel's declaration and

excluded it while noting that it presented genuine issues of fact that would have defeated

summary judgment. Both Hunt and Blood had submitted their own affidavits that took

---

[3] Sentinel indicated a fear that Mr. Hunt might use the information to compete with it.

[4] Blood has proceeded pro se while Hunt has been represented by counsel throughout the action.

4

No. 30553-8-III consolidated with 30592-9-III;
30837-5-III; 30881-2-III
SentinelC3 v. Hunt

issue with some of Kukull's work and referenced their own original demands. The court

granted summary judgment and later awarded Sentinel its attorney fees and costs under

RCW 23B.13.310.

The dissenters sought reconsideration and Mr. Hunt submitted an admissible copy

of Mr. Hecker's report. The court denied reconsideration, commenting only that there

was "not sufficient cause shown to alter" its decision. Both Hunt and Blood timely

appealed after the denial of reconsideration.

The court subsequently entered a judgment in Sentinel's behalf for attorney fees

and costs. Once again, the dissenters individually appealed to this court. The four

matters were consolidated.

ANALYSIS

This appeal challenges the court's valuation ruling at summary judgment, the

decision to exclude Hecker's valuation, and the award of attorney fees without

appropriate findings. We agree with the challenges to the valuation and the attorney fee

award; those two matters are discussed in that order. In light of our disposition, we do

not address the exclusion of the valuation.

5

No. 30553-8-III consolidated with 30592-9-III;
30837-5-III; 30881-2-III
SentinelC3 v. Hunt

Summary judgment rulings are reviewed de novo since an appellate court sits in the same position as the trial court. *Hubbard v. Spokane County*, 146 Wn.2d 699, 706-07, 50 P.3d 602 (2002). Summary judgment is proper when, after viewing the evidence in a light most favorable to the opposing party, there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 93, 993 P.2d 259 (2000). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Id.* Summary judgment should be granted if reasonable persons could reach but one conclusion based on all of the evidence. *Id.*

*Valuation of Dissenters' Shares*

The parties strenuously debate the propriety of resolving a dissenters' rights valuation case at summary judgment, with the appellants contending that the trial court's obligations under the valuation statute necessitate weighing of evidence and preclude resolution at summary judgment. We need not go that far because we conclude that the appellants did establish material questions of fact that precluded summary judgment.

6

In a dissenters' rights action, a corporation is required to petition a court to determine the "fair value of the shares and accrued interest." RCW 23B.13.300(1). "Fair value," in turn, is defined as

> the value of the shares immediately before the effective date of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable.

RCW 23B.13.010(3). These standards are part of the current Washington Business Corporation Act, Title 23B RCW, adopted by LAWS OF 1989, ch. 165.

Prior to the adoption of the current provisions, the former corporations act had required that the trial court "shall, by its decree, determine the value of the shares" held by the dissenters. § 3803-41 Rem. Supp. 1949 (quoted in *In re Nw. Greyhound Lines*, 41 Wn.2d 672, 677, 251 P.2d 607 (1952)).[5] Noting that the legislature had not developed a definition of "value," *Greyhound* defined it as a word that

> contemplates a consideration of all the facts and circumstances pertinent to a particular case in an effort to arrive at a fair and reasonable compromise or arbitration which may in some degree be lacking in mathematical exactness or certitude.

41 Wn.2d at 680.

---

[5] This provision subsequently was codified at former RCW 23.01.450(1) and former RCW 23A.24.040.

7

The legislature in 1965 changed the statute to reflect the need to give "fair value" rather than "value" to the minority shares. LAWS OF 1965, ch. 53 § 83 (repealing LAWS OF 1949, ch. 188). In adopting the current Business Corporation Act in 1989, the legislature noted that the term "fair value" "leaves untouched the accumulated case law." SENATE JOURNAL, 51st Leg., 2nd Spec. Sess., at 2977-3112 (Wash. 1989) (reprinting the Comments on the Washington Business Corporation Act prepared by the Corporate Act Revision Committee of the Washington State Bar Association, §13.01). Since "value" and "fair value" mean the same, our courts have continued to apply *Greyhound* to the valuation of dissenters' shares. *E.g.*, *Matthew G. Norton Co. v. Smyth*, 112 Wn. App. 865, 874, 51 P.3d 159 (2002); *Robblee v. Robblee*, 68 Wn. App. 69, 77-78, 841 P.2d 1289 (1992).

At the time of *Greyhound*, the statutory scheme required the trial court to appoint an appraiser to value the stock. 41 Wn.2d at 676 (citing § 3803-41, Rem. Supp. 1949). The appraiser's valuation was not dispositive; the trial court was to review the valuation de novo. *Id.* at 683, 685. Our current statute permits, but does not require, the court to appoint one or more appraisers to assist it. RCW 23B.13.300(5). The court has "plenary and exclusive" jurisdiction over the case. *Id.* The modern statute "retains the concept of

8

judicial appraisal as the ultimate means of determining fair value." SENATE JOURNAL,

51st Leg., 2nd Spec. Sess., at 3092-3093 (Wash. 1989) (reprinting the Comments on the

Washington Business Corporation Act prepared by the Corporate Act Revision

Committee of the Washington State Bar Association, §13.30).

We believe this statutory arrangement thus retains the obligation of the trial judge

to undertake a de novo review of the evidence and not uncritically accept the appraiser's

report. In this respect the obligation is similar to that imposed in other areas. *E.g.*,

*Richey & Gilbert Co. v. Nw. Natural Gas Corp.*, 16 Wn.2d 631, 649-50, 134 P.2d 444

(1943) ("'And, while great weight should always be given to the opinions of those

familiar with the subject, they are not to be blindly received, but are to be intelligently

examined by the jury in the light of their own general knowledge.'" (quoting *Head v.*

*Hargrave*, 105 U.S. 45, 49, 26 L. Ed. 1028 (1881)); *In re Marriage of Pilant*, 42 Wn.

App. 173,178, 709 P.2d 1241 (1985) (court rejected the testimony of the sole expert on a

pension valuation issue: "A court is not required to accept the opinion testimony of

experts solely because of their special knowledge; rather, the court decides an issue upon

its own fair judgment, assisted by the testimony of experts."); *Suther v. Suther*, 28 Wn.

9

App. 838, 627 P.2d 110 (1981) (court in dissolution proceeding properly valued stock differently than experts).

With this background, we now address the issues presented by the summary judgment ruling. First, the dissenters argue that in light of the court's obligation to find fair value, the court could never resolve a dissenters' rights case at summary judgment because the court must weigh the testimony and determine whether to accept the expert's valuation, actions that are contrary to the standards of a summary judgment hearing. As a categorical matter, we reject the argument while acknowledging that it has some force. This court previously has permitted summary judgment on valuation procedures in a dissenters' rights case. *See Matthew G. Norton Co.*, 112 Wn. App. 865 (partial summary judgment). We can envision valuation fact patterns that would be subject to summary judgment. For instance, if competing experts agreed on the corporation's fair value, but one of them improperly applied a discount that our courts have already rejected, we could see a trial judge accepting the agreed-upon valuation for the corporation since the fact of valuation was not in dispute. The trial court would also, however, have been free to reject the valuation altogether.

10

Nonetheless, the trial court's duty to find fair value and not blindly accept the expert's opinion has some play in this summary judgment and informs the court on whether a material question of fact exists. Mr. Blood's affidavit, his settlement demand, and interrogatory answers were all put before the court at summary judgment. In them, he explained that the experts he and Mr. Hunt had consulted had evaluated the company at $0.4267 cents per share. He then valued his stock at an even higher rate due to the belief that the company had an agreement to buy nearly one-quarter of its shares back from some of the other stockholders. Mr. Hunt similarly used the consulting expert's valuation as the basis for his request before increasing it due to the belief that a sale was in the offing.

We believe these facts established a genuine issue of material fact that went to the court's duty in this case to determine the fair value of the stock. The court was given a valuation of 42 cents per share attributed to an expert that conflicted with Kukull's valuation of 19 cents per share. Although it constituted hearsay and was set forth without the reasoning supporting the valuation, this unchallenged evidence still suggested that Kukull's valuation was not the sole calculation before the court. The court had a duty under the statute to consider all of that information in making its determination of fair

11

value. Given the evidentiary support for Kukull's work, it was reasonable for the court to

be persuaded by that valuation. Nonetheless, under these facts, that determination

required the court to consider the dissenters' evidence. While it was understandably

rejected, the weighing of that evidence at summary judgment was improper and needed to

be done at trial.[6]

The dissenters' valuations, even without the evidence from their trial expert

Hecker, raised a question of fact under the court's statutory duty in this area. The

conflicting evidence did not allow the court to determine fair value at summary judgment.

Accordingly, we reverse the summary judgment order and remand for further

proceedings.

*Attorney Fees*

In light of our reversal of the summary judgment ruling, the award of attorney fees

necessarily falls. The award also failed on its merits.

---

[6] The parties do not address, and we do not consider, whether moving the
company from Idaho to Washington changed its tax burdens or other costs in a manner
that would have impacted the valuation of the corporation. The change was effective
prior to the reverse stock split and thus was a relevant consideration, although the record
does not indicate if the change had any significance.

12

No. 30553-8-III consolidated with 30592-9-III;
30837-5-III; 30881-2-III
SentinelC3 v. Hunt


RCW 23B.13.310 governs the award of costs and attorney fees in these actions,

which provides:

> (1) The court in a proceeding commenced under RCW 23B.13.300 shall
> determine all costs of the proceeding, including the reasonable
> compensation and expenses of appraisers appointed by the court. The court
> shall assess the costs against the corporation, except that the court may
> assess the costs against all or some of the dissenters, in amounts the court
> finds equitable, to the extent the court finds the dissenters acted arbitrarily,
> vexatiously, or not in good faith in demanding payment under RCW
> 23B.13.280.
> (2) The court may also assess the fees and expenses of counsel and
> experts for the respective parties, in amounts the court finds equitable:
> (a) Against the corporation and in favor of any or all dissenters if
> the court finds the corporation did not substantially comply with the
> requirements of RCW 23B.13.200 through 23B.13.280; or
> (b) Against either the corporation or a dissenter, in favor of any
> other party, if the court finds that the party against whom the fees and
> expenses are assessed acted arbitrarily, vexatiously, or not in good faith
> with respect to the rights provided by chapter 23B.13 RCW.
> (3) If the court finds that the services of counsel for any dissenter
> were of substantial benefit to other dissenters similarly situated, and that the
> fees for those services should not be assessed against the corporation, the
> court may award to these counsel reasonable fees to be paid out of the
> amounts awarded the dissenters who were benefited.

Subsections (1) and (2) set forth the general principles at issue in this action. The

corporation will normally bear the costs, including those of appraisal, unless the court

finds that some of the dissenters acted "arbitrarily, vexatiously, or not in good faith" with

respect to the payment demand. RCW 23B.13.310(1). The court can award attorney

13

fees, as well as expert fees, against the corporation if it does not substantially comply with the statute's dissenters' rights processes. RCW 23B.13.310(2)(a). The court can assess attorney and expert fees against any party that acts "arbitrarily, vexatiously, or not in good faith" under the statute. RCW 23B.13.310(2)(b). The amount of the award of attorney and expert fees must be "equitable." RCW 23B.13.310(2).

RCW 23B.13.310 appears directed toward intransigence and unreasonable behavior. The legislature expressed the intent of this provision:

> Proposed section 13.31 provides that generally the costs of the appraisal proceeding should be assessed against the corporation. But the court is authorized to assess these costs, in whole or in part, against the dissenters if it concludes they acted arbitrarily, vexatiously, or not in good faith in making the Proposed section 13.28 demand for additional payment. Similarly, counsel fees may be charged against the corporation or against dissenters upon a finding of a failure to comply in good faith with the requirements of this chapter. Individual dissenters, in turn, can be called upon to pay counsel fees for other dissenters if the court finds that the services were of substantial benefit to the other dissenters.
> The purpose of these grants of discretion with respect to costs and counsel fees is to increase the incentives of both sides to proceed in good faith under this chapter to attempt to resolve their disagreement without the need of a formal judicial appraisal of the value of shares.

SENATE JOURNAL, 51st Leg., 2nd Spec. Sess., at 3093 (Wash. 1989) (reprinting the Comments on the Washington Business Corporation Act prepared by the Corporate Act Revision Committee of the Washington State Bar Association, §13.31).

14

No. 30553-8-III consolidated with 30592-9-III;
30837-5-III; 30881-2-III
SentinelC3 v. Hunt

In a pair of opinions on the same case, the Washington Supreme Court recently

dealt with the virtually identical fee provisions of RCW 25.15.480 that govern limited

liability companies.[7] It stated the standards of review in the first opinion: an award under

the statute is not mandatory, but is discretionary with the trial court and is reviewed on

appeal for abuse of that discretion. *Humphrey Indus. v. Clay St. Assocs.*, 170 Wn.2d 495,

506-07, 242 P.3d 846 (2010) (*Humphrey* I). In the second opinion, the court clarified its

holding in the first case with respect to the behavior and standards governing fee awards.

As provided in the statute, fees are available only if a party acted "arbitrarily,

vexatiously, and not in good faith." *Humphrey Indus. v. Clay St. Assocs.*, 176 Wn.2d

662, 670, 295 P.3d 231 (2013) (*Humphrey* II). The court also clarified that the

dissenters' actions of declining the corporation's offer and submitting an excessive

valuation did not violate the statutory standard. *Id.*

Neither *Humphrey* I nor *Humphrey* II addresses the trial court's obligations in

addressing a fee request. We believe that consistent with the standards in other attorney

fee award situations, the trial court is obligated to enter findings of fact and conclusions

---

[7] The events in this case, including the appellate briefing, occurred between the
two *Humphrey* opinions, so the trial court and the parties did not have the benefit of
*Humphrey* II.

15

of law that support its determination that a party acted "arbitrarily, vexatiously, or not in good faith" under the statute. *See generally*, *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998) (requiring trial court to apply lodestar formula and enter written findings to facilitate review). The failure to enter appropriate findings will normally result in a remand. *Id.*

Application of these principles to this case requires that we reverse the attorney fee award. The absence of a record explaining the basis for the fee award at minimum would require a remand. *Id.* However, in light of *Humphrey* II, nothing in the record of this case supports a determination of arbitrary, vexatious, or bad faith litigation. The dissenters did not accept Sentinel's valuation and, instead, sought their own which they then used as the basis for their counterproposals. Litigation ensued when Sentinel did not accept the counterproposals. The record does not suggest that either side instigated the litigation by behaving improperly, nor does it show that either side engaged in litigation conduct that would trigger fees under the statute.

Sentinel argues that the failure to admit Hecker's report (or any expert opinion) at the summary judgment hearing justified the award. For two reasons, it did not. First, the failure to admit evidence is not the same as a failure to obtain a valuation. At worst,

16

assuming some sort of duty even existed, the failure to properly authenticate the report only hurt the dissenters and was negligence, not intransigence or arbitrary conduct.[8] The dissenters had evidence to support their position and had made the evidence known to Sentinel, but they simply did not present it in admissible form at the hearing.

Second, even if the dissenters had behaved vexatiously at the summary judgment hearing, such action would not have retroactively made the entire proceedings arbitrary or vexatious. An award of fees to address vexatious behavior is proper under the statute. Nothing in the statute should be read, however, to shift the entire costs of the litigation to one party just because of a late stumble in the proceedings. Instead, we read the statute as attempting to discourage bad faith and arbitrary behavior by providing a remedy to the nonoffending party for all costs associated with the bad behavior. Properly and perfectly conducted pretrial litigation does not become vexatious merely because of arbitrary conduct during the ensuing trial. As noted in the legislative history, arbitrary or vexatious behavior that triggers litigation may properly shift the cost of the entire case because it causes the ensuing litigation. However, the remedy for later occurring

_____

[8] It appears that the problem arose in the rush to get the report completed and filed before the summary judgment hearing. With the benefit of hindsight, it would have been better to have continued the hearing, but the failure to do so was not arbitrary conduct that harmed Sentinel.

17

No. 30553-8-III consolidated with 30592-9-III;
30837-5-III; 30881-2-III
SentinelC3 v. Hunt

improper behavior should only reach the consequences of the offending conduct; it does

not address earlier proper conduct.

For the reasons noted, the award of attorney fees is reversed. Both parties seek

attorney fees for this appeal. We exercise our discretion under the statute to decline their

requests. Appellants, as prevailing parties, are entitled to solely their statutory costs and

fees in this action. RAP 14.1, et seq.

Reversed and remanded.

Korsmo, C.J.

WE CONCUR:

Brown, J.

Kulik, J.

18