

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 3 1 2014

~~McCen, C.J.~~
CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on July 31, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| SENTINELC3, INC., a Washington Corporation, | NO. 89317-9 |
| Petitioner, | EN BANC |
| v. | |
| CHRIS J. HUNT, an individual and the marital community, if any, comprised of CHRIS J. HUNT and CARMEN HUNT; MICHAEL BLOOD, an individual and the marital community, if any, comprised of MICHAEL BLOOD and JANAE BLOOD, | Filed JUL 3 1 2014 |
| Respondents. | |

GORDON McCLOUD, J.—This case concerns a judicial proceeding to determine the fair value of shares in a closely held corporation. The primary question presented is whether the respondents, shareholders who disagreed with the

corporation's estimate of that fair value, presented sufficient evidence to defeat the corporation's motion for summary judgment. We must also decide whether the trial court properly awarded attorney and expert fees to the corporation.

We hold that the respondents did not provide sufficient evidence to defeat the corporation's motion for summary judgment. We also hold that the respondents did not act in a manner that justified the trial court's award of fees to the corporation. We therefore reverse the Court of Appeals as to the summary judgment issue and affirm it as to the fees.

## FACTS

Respondents Chris Hunt and Michael Blood (collectively Respondents) owned shares of Petitioner SentinelC3 Inc. (Sentinel), a closely held corporation. Hunt owned 1,000,000 shares (approximately a 22.2 percent interest), and Blood owned 250,000 shares. On April 19, 2010, Sentinel provided the Respondents with a valuation report prepared by a business valuation expert named James Kukull (Kukull Report). The Kukull Report valued the Respondents' interests at $0.1952 per share as of December 31, 2009.

On October 28, 2010, a majority of the Sentinel shareholders voted to approve a reverse stock split. The Respondents were the only dissenting shareholders.

As dissenting shareholders, the Respondents were entitled under Washington's dissenters' rights statute to payment for the "fair value" of their shares, plus interest, as of the date immediately preceding the reverse stock split. RCW 23B.13.010, .250. Sentinel estimated the fair value of the shares to be the same as that reflected in the Kukull Report: $0.1952 per share. It issued checks to both men consistent with that estimate.

The Respondents disagreed with the estimate in the Kukull Report. Per RCW 23B.13.280, both Respondents notified Sentinel that they objected to the company's valuation and had retained their own valuation expert to evaluate the shares. Each claimed that the valuation expert placed the per share price at $0.4267, and each objected that Kukull's valuation was outdated at the time of the reverse stock split.

In other respects, however, the Respondents' fair value estimates differed from one another. Hunt asserted that the value of the shares would be 20 percent higher if a "negotiated transaction of the corporation to a strategic buyer is imminent" and stated that he believed that Sentinel was contemplating such a sale. Clerk's Papers (CP) at 62. Blood claimed that Sentinel's nondissenting shareholders had arranged some sort of "'close' agreement" whereby the number of total shares was artificially inflated—and his own interest thereby artificially diminished—just

prior to the reverse stock split. CP at 328-29. He asserted that during discussions following the reverse split vote,

> it became clear that Sentinel had already offered and The Managing Class of Shareholders . . . accepted an agreement [that] allowed The Managing Class . . . to exchange their shares of Sentinel for another Sentinel asset with separate benefits before their fractional shares were repurchased along with the Non Managing Class of Shareholders after the recapitalization of Sentinel.

CP at 327-28. According to Blood, the proper value of his shares was $0.6443 per share.

Pursuant to RCW 23B.13.300, Sentinel petitioned the superior court for a determination of the shares' fair value. RCW 23B.13.300 requires a corporation to commence such a proceeding within 60 days after receiving a dissenting shareholder's demand for payment, unless the corporation elects to meet the demand instead. That statute also provides that "[t]he dissenters are entitled to the same discovery rights as parties in other civil proceedings" and that "[t]he court may appoint one or more persons as appraisers to receive evidence and recommend decision on the question of fair value." RCW 23B.13.300(5).

Blood and Hunt answered Sentinel's petition on March 10 and April 7, 2011, respectively. On May 6, 2011, the trial court entered a case schedule order with a discovery cutoff date of December 9, 2011.

In early April 2011, the Respondents answered Sentinel's first interrogatories and requests for production and identified the valuation experts they had retained as "Meg Carlson and Korri Hall, the C & H Group, LLC." CP at 334, 348. The Respondents refused to produce any documents related to Carlson's and Hall's valuation, however, on the ground that they had "retained them as consulting experts only." CP at 334, 349 (emphasis omitted). Hunt also asserted that his belief that Sentinel might be contemplating a sale to a strategic buyer was "based upon the actions of Sentinel C3." CP at 350. Blood did not explain the basis for his allegation that Sentinel had artificially diminished his shares' value in a secret agreement.

In late June and early July 2011, Sentinel responded to the Respondents' first interrogatories. Sentinel objected to many of the Respondents' interrogatories and requests for production on the grounds that they were unduly burdensome, called for privileged information, or were unlikely to lead to the discovery of admissible evidence. Indeed, many of the Respondents' requests were quite broad. *E.g.*, CP at 394 ("Please identify all corporate actions and/or corporate documents of Sentinel C3 . . . which were created, started, discussed, partially carried out, completed or which any other activity was performed related to the action or document between January 1, 2008 and the present . . . ."). Despite its objections, Sentinel produced many responsive documents. It also asked for a protective order preventing public

dissemination of corporate documents containing trade secrets. On August 5, 2011, the Respondents stipulated to the entry of that protective order. The trial court entered it one month later. CP at 565.

Four days after the Respondents stipulated to the entry of the protective order, Sentinel moved for summary judgment on the ground that the dissenters had not offered any evidence to refute the company's valuation. Sentinel also requested attorney and expert fees under RCW 23B.13.310(2)(b). That statute allows the court to

> assess the fees and expenses of counsel and experts for the respective parties, in amounts the court finds equitable: . . . if the court finds that the party against whom the fees and expenses are assessed acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by chapter 23B.13 RCW.

RCW 23B.13.310(2)(b). Along with this motion, Sentinel filed an affidavit by Kukull swearing to the truth of the January 17, 2011, letter in which he stated that "the value per share . . . as shown in [his] appraisal report as of December 31, 2009 had [not] changed significantly as of October 31, 2010." CP at 319-20.

Hunt filed a response on September 26, 2011. He argued that the discovery cutoff date was December 9, 2011 (still two and a half months off), that he had recently retained an (unnamed) expert who would testify as to the shares' value, and that this expert was still going through the financial records obtained in discovery.

He also asserted that Kukull's letter and affidavit were contradicted by Sentinel's financial records. Specifically, he claimed that the Kukull Report "relied upon a statement that Sentinel C³ expected minimal or no growth in 2010," and that this statement was "no longer true as of October 28, 2010" when "financial records showed an increase in growth of approximately 9%." CP at 562.

Blood also filed a response in opposition to summary judgment. Like Hunt's, Blood's response asserted that the Kukull Report was out of date and failed to reflect higher than expected revenues at the time payment was due. Unlike Hunt's, it did not mention any other expert's valuation. Instead, it reasserted Blood's theory that Sentinel's "Management Class" had "concocted a plan to force [the Respondents] out of the company" and reached a "secret agreement" to artificially diminish the value of the dissenters' shares. CP at 576. Blood provided no specific (nonconclusory) facts in support of these allegations.

In response, the parties stipulated to a short continuance for additional discovery related to the newly disclosed (unnamed) expert witness. The court set a new summary judgment hearing date for October 21, 2011.

On October 13, 2011, Hunt provided Sentinel with a copy of the expert testimony he planned to introduce at trial—a valuation report by a certified public accountant named Jerry Hecker (Hecker Report). Hunt did not file the report with

an affidavit from Hecker swearing to the truth of its contents. Instead, on October 18, he filed it with the court with an affidavit from his attorney stating that it was "a true and accurate copy of Hunt's Fair Value Analysis of Sentinel C3, Inc." CP at 597. At the summary judgment hearing, Hunt's attorney acknowledged that his affidavit was not sufficient to authenticate the Hecker Report. Verbatim Report of Proceedings (VRP) (Oct. 21, 2011) at 18. He also acknowledged that it was not sufficient to make the report admissible in a trial. *Id.*

The Respondents contended that Sentinel's motion for summary judgment was premature because the discovery deadline was still two months away. Accordingly, in their responses to Sentinel's motion for summary judgment, they sought a continuance to pursue further discovery.[1]

But the Respondents requested the continuance in the alternative. They argued first that their respective affidavits sufficed to create genuine issues material fact, and they requested the continuance only in the event that the trial court found otherwise. At the summary judgment hearing, the court put them to a choice:

---

[1] Civil Rule (CR) 56(f) allows a trial court to order a continuance when "it appear[s] from the affidavits of a party opposing [a summary judgment] motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition." *See also Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 24, 851 P.2d 689 (1993) (if nonmoving party needs more time to respond to summary judgment motion, the party should request a continuance under CR 56(f) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986))).

[I]t seems the . . . parties resisting the motion are saying we want you to deny the motion or grant a continuance. The Court won't do that. The Court is going to say to you either move for a continuance or not. You can't say if we win, we don't want to continue; if we're not going to win, we want it continued. . . . So right now before we go any further I'm asking you to make your call. Are you moving for a continuance or not?

VRP (Oct. 21, 2011) at 4.

In response, both Respondents expressly waived their requests for a continuance, proceeding on the theory that they had created a genuine issue of material fact just by swearing that their own valuation expert disagreed with Sentinel's. Hunt seems to have believed that he could rely on the Hecker Report without authenticating it because he had provided Sentinel with a copy.[2] Both parties believed that their sworn disagreement with Sentinel's estimate was, in and of itself, sufficient to create a genuine issue of material fact.[3]

---

[2] VRP (Oct. 21, 2011) at 4 ("We provided our expert's report to the petitioner. There's no need to enter into a continuance.").

[3] *Id.* at 12-13 (argument by Hunt's counsel) ("Now ignoring the existence of [the Hecker Report], even if that report was never provided to petitioner in this case, petitioner still has the obligation to prove the accuracy and completeness of their own report. There's no substantiation provided by the petitioner to say that just because you have a report filed immediately makes that report valid. In actuality [RCW] 23B.13.300 allows the Court even the opportunity if there is a disagreement as to fair value to hire their own expert, meaning that the petitioner has to actually prove the accuracy and validity of its own report."), 21(argument by Blood proceeding pro se) ("[T]he way I read the statute is that I could come in and ask the Court could you please provide a court-appointed appraiser to determine the actual value [of] this corporation. The value here is not enough for me to go and get an attorney.").

Because the Hecker Report was not admissible, the trial court refused to consider it in the summary judgment proceeding. On the basis of the other evidence presented, the court granted Sentinel's motion for summary judgment. In doing so, it also granted Sentinel's motion for attorney fees but did not provide any reasoning to support the award.

On November 18, 2011, the Respondents filed a motion for reconsideration. Along with this motion, the Respondents filed a declaration by Hecker certifying under penalty of perjury that he was prepared to testify that his valuation was more accurate than Kukull's.

The trial court denied the motion for reconsideration on January 6, 2012. The Respondents appealed.[4]

The Court of Appeals framed the appeal as challenging three actions by the trial court: "[(1)] the court's valuation ruling at summary judgment, [(2)] the decision to exclude Hecker's valuation, and [(3)] the award of attorney fees without

---

[4] The Respondents did not assign error to the trial court's denial of their motion for reconsideration. Nor did they address that issue anywhere in their briefs on appeal. For those reasons, we do not address the denial of their motion for reconsideration. The technical failure to assign error on appeal does not waive an issue that is clearly argued in the briefs, but when *neither* the assignments of error *nor* the substance of the briefs raises an issue, the other party might be prejudiced if the court addressed it. *State v. Olson,* 126 Wn.2d 315, 318-22, 893 P.2d 629 (1995). Such prejudice is a "compelling reason" for the court not to exercise its discretion under Rules of Appellate Procedure (RAP) 1.2(a) to consider a case on its merits, overlooking procedural imperfections. *Id.* at 323-24.

10

appropriate findings." *SentinelC3, Inc. v. Hunt,* 176 Wn. App. 152, 158, 309 P.3d

582 (2013). It agreed with the Respondents on the first and last issues, holding that

the trial court erred by granting summary judgment on the valuation question and by

granting Sentinel's request for attorney fees. *Id.* It purported not to address the trial

court's decision to exclude the Hecker valuation. *Id.*[5]

The Court of Appeals concluded that the Respondents created a genuine issue

of material fact just by asserting that they had consulted an expert who disagreed

with Sentinel's valuation. *Id.* at 162. According to this logic, the Respondents had

no obligation to properly offer this expert's valuation—the trial court was

nevertheless obligated to presume that the valuation *would be* offered in admissible

form, and that it would support the Respondents' claims:

> Mr. Blood's affidavit, his settlement demand, and his interrogatory
> answers were all put before the court at summary judgment. In them,
> he explained that *the experts he and Mr. Hunt had consulted* had
> evaluated the company at $0.4267 cents per share. He then valued his
> stock at an even higher rate due to the belief that the company had an
> agreement to buy nearly one-quarter of its shares back from some of

---

[5] The Court of Appeals' distinction between "the [trial] court's valuation ruling" and "the decision to exclude Hecker's valuation" is untenable. *Sentinel,* 176 Wn. App. at 158. The Court of Appeals concluded that the Respondents' affidavits and interrogatory answers established a genuine issue of material fact even though they were based entirely on a consulting expert's valuation that "constituted hearsay." *Id* at 162. Thus, the Court of Appeals held that evidence is sufficient to survive summary judgment even if it is inadmissible because it is hearsay. That logic applies equally to evidence, like the Hecker Report, that is inadmissible because it is unauthenticated. Thus, the Court of Appeals *did* implicitly hold that the Hecker valuation should have been considered at summary judgment.

the other stockholders. Mr. Hunt similarly used *the consulting expert's valuation* as the basis for his request before increasing it due to the belief that a sale was in the offing.

*Id.* (emphasis added). Thus, the Court of Appeals held that hearsay and unsubstantiated "belief" are sufficient to defeat a motion for summary judgment. *Id.*

## ANALYSIS

### 1. The Trial Court Did Not Err in Granting the Corporation's Motion for Summary Judgment

A summary judgment ruling is reviewed de novo, with "'the appellate court engag[ing] in the same inquiry as the trial court.'" *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000) (quoting *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 92-93, 993 P.2d 259 (2000)). On a motion for summary judgment, all facts submitted and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Trimble*, 140 Wn.2d at 93.

A court may grant a motion for summary judgment only if, on the basis of the facts submitted, "'reasonable [minds] could reach but one conclusion.'" *Id.* (quoting *Clements v. Travelers Indemn. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993)). But "bare assertions that a genuine material issue exists" do not constitute facts sufficient to defeat a motion for summary judgment. *Id.* Instead, an affidavit opposing summary judgment must (1) be made on the affiant's personal knowledge, (2) be supported by facts admissible in evidence, and (3) show that the affiant is

12

competent to testify to the matters therein. Civil Rule (CR) 56(e); *Bernal v. Am. Honda Motor Co.,* 87 Wn.2d 406, 412, 553 P.2d 107 (1976).

The Court of Appeals erred in ruling that the Respondents' assertions were sufficient to defeat summary judgment. First, to defeat a motion for summary judgment, a party must present more than "[u]ltimate facts" or conclusory statements. *Grimwood v. Univ. of Puget Sound, Inc.,* 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988) (mere "supposition or opinion" insufficient to defeat summary judgment). The Respondents' beliefs about secret deals and pending sales do not meet this standard, because they were not based on any actual evidence.

Second, evidence submitted in opposition to summary judgment must be admissible. *Bernal,* 87 Wn.2d at 412. Unauthenticated or hearsay evidence does not suffice. *See State v. (1972) Dan J. Evans Campaign Comm.,* 86 Wn.2d 503, 506-07, 546 P.2d 75 (1976) (statements in affidavits based on hearsay evidence carry no weight at summary judgment); *Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.,* 122 Wn. App. 736, 745-47, 87 P.3d 774 (2004) (attorney's affidavit cannot authenticate document about which attorney has no personal knowledge; document is therefore inadmissible for purposes of summary judgment); *Burmeister v. State Farm Ins. Co.,* 92 Wn. App. 359, 365, 966 P.2d 921 (1998) (on summary judgment motion court should consider only admissible evidence, and authentication is

"condition precedent to admissibility" (citing Rules of Evidence (ER) 901(a))); *see also Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) ("It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment.") In *Burmeister*, the Court of Appeals rejected exactly the type of improper authentication that Hunt attempted here. 92 Wn. App. at 365 (holding trial court could not consider police report whose authenticity was sworn to by plaintiff's attorney but not by officer who authored the report). Neither the unsworn statements of the Respondents' consulting expert nor the Hecker Report meet this standard. The Court of Appeals erred in holding otherwise.[6]

In addition to arguing that the Hecker Report was admissible to preclude summary judgment, the Respondents contend that their own sworn disagreement with Sentinel's estimate was, in and of itself, sufficient to create a genuine issue of material fact. Answer to Pet. for Discretionary Review at 15. They maintain that

---

[6] The Respondents did make one assertion in opposition to summary judgment that the Court of Appeals did not address—the assertion that Kukull's valuation assumed minimal or no growth in 2010, when financial records in fact showed growth that year. This does not suffice to defeat the summary judgment motion, either. The Respondents did not provide the financial records on which they based this assertion, did not explain how it related to the value of their shares, and did not establish their own competence to provide such an explanation. Thus, the assertion does not constitute the kind of admissible evidentiary fact required to create a genuine material issue. *Bernal*, 87 Wn.2d at 412 ("To support a denial of summary judgment, [an] affidavit . . . must . . . (1) be made on personal knowledge, (2) set forth admissible evidentiary facts, and (3) affirmatively show the affiant is competent to testify to the matters stated therein." (citing CR 56(e)).

by accepting Kukull's evaluation over their own, the trial court improperly weighed evidence and credibility at the summary judgment stage. *Id.* at 10.

The Respondents are correct that the court, rather than any expert witness, makes the ultimate valuation decision in a dissenter's rights action. *See Richey & Gilbert Co. v. Nw. Natural Gas Corp.*, 16 Wn.2d 631, 647-50, 134 P.2d 444 (1943) (court not bound to accept expert testimony as to valuation of property with no definite market value). They are also correct that the owner of closely held shares may testify as to the shares' value. *In re Marriage of Gillespie*, 89 Wn. App. 390, 403, 948 P.2d 1338 (1997).

But lay witness opinion testimony must be based on firsthand knowledge or observation. ER 701; *Ashley v. Hall*, 138 Wn.2d 151, 157-58, 978 P.2d 1055 (1999). Here, the Respondents established no basis for their valuation opinions other than their consultation with independent experts. Because they never authenticated the testimony of these experts, the trial court could not consider it when ruling on Sentinel's motion for summary judgment. CR 56(e); *Bernal*, 87 Wn.2d at 412; *(1972) Dan J. Evans Campaign Comm.*, 86 Wn.2d at 506-07; *Int'l Ultimate*, 122 Wn. App. at 745-47. The trial court therefore properly concluded that the Respondents had produced no admissible evidence in support of their valuation testimony prior to the summary judgment hearing.

15

Ultimately, the Respondents advance an interpretation of the dissenters' rights statute according to which a dissenting shareholder is *always* entitled to a trial:

> [E]ven if Sentinel C3 was the only party with an expert . . . or even the only party with a valuation . . . the court still had to determine if that expert's valuation constituted fair value. In order to do that, the court had to weigh the evidence and assess the credibility of Sentinel C3's expert – *and the court cannot do that on summary judgment.*

Br. of Appellants Hunt at 24.

We reject this interpretation of chapter 23B.13 RCW because it conflicts with the statute's plain language. Under RCW 23B.13.300(5) the trial "*may* appoint one or more persons as appraisers to receive evidence and recommend decision on the question of fair value." (Emphasis added.) This statute is permissive, but under the Respondents' theory it would become mandatory.[7] This does not comport with the statutory scheme.

---

[7] *See* VRP (Oct. 21, 2011) at 12-13 (argument by Hunt's counsel) ("Now ignoring the existence of [the Hecker Report], even if that report was never provided to petitioner in this case, petitioner still has the obligation to prove the accuracy and completeness of their own report. There's no substantiation provided by the petitioner to say that just because you have a report filed immediately makes that report valid. In actuality [RCW] 23B.13.300 allows the Court even the opportunity if there is a disagreement as to fair value to hire their own expert, meaning that the petitioner has to actually prove the accuracy and validity of its own report."), 21 (argument by Blood proceeding pro se) ("[T]he way I read the statute is that I could come in and ask the Court could you please provide a court-appointed appraiser to determine the actual value [of] this corporation. The value here is not enough for me to go and get an attorney.").

16

We note that this statutory scheme affords the trial judge considerable discretion. Another judge might have appointed an appraiser to review Sentinel's share valuation—the statute permits this. RCW 23B.13.300(5). But the statute does not require it. In this case the Respondents had ample time in which to produce admissible evidence in support of their own valuation. They did not produce any such evidence. Instead, they declined a continuance during which they could have authenticated their expert testimony, opting to proceed on the theory that their mere disagreement with Sentinel's valuation—unsubstantiated by any nonconclusory evidence or basis of knowledge—created a genuine issue of material fact. The trial court correctly rejected that theory and ruled that no genuine issue of material fact remained. We therefore reverse the Court of Appeals' decision as to the summary judgment valuation ruling.

2. *The Trial Court Erred in Awarding Attorney and Expert Fees to the Corporation*

This court reviews the award of attorney fees pursuant to statutes such as RCW 23B.13.310 for abuse of discretion. *Humphrey Indus., Ltd. v. Clay Street Assocs.,* 170 Wn.2d 495, 506, 242 P.3d 846 (2010) (addressing analogous attorney fee statute applicable to limited liability companies). Thus, "[w]e reverse a trial court's decision under this standard only if it 'is manifestly unreasonable, exercised

on untenable grounds, or exercised for untenable reasons.'" *Id.* (quoting *Noble v. Safe Harbor Family Pres. Trust*, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009)).

In determining an award of attorney fees, the trial court may not rely solely on counsel's fee affidavits. *Mahler v. Szucs*, 135 Wn.2d 398, 434-35, 957 P.2d 632 (1998) (citing *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 744, 733 P.2d 208 (1987), *implied overruling on other grounds recognized in Matsyuk v. State Farm Fire & Cas. Co.*, 173 Wn.2d 643, 659, 272 P.3d 802 (2012)). Rather, it must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the trial court awarded the amount in question. *Id.* at 435 (record must explain, for example, whether the rates billed were reasonable).

> The dissenters' rights statute allows, but does not require, the court to
>
> assess the fees and expenses of counsel and experts for the respective parties, in amounts the court finds equitable: . . . if the court finds that the party against whom the fees and expenses are assessed acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by chapter 23B.13 RCW.

RCW 23B.13.310(2)(b). In this case, the trial court did not enter any findings of fact or conclusions of law justifying its attorney fee award. Instead, it entered a two-page "Judgment Summary" stating that it had denied the Respondents' motions for reconsideration and was "therefore" granting Sentinel's request for attorney fees and costs. CP at 1077-79. The Judgment Summary recited the amount of attorney fees

18

as $72,419.50. CP at 1077. It also recited $2,939.14 and $1,828.00 in costs and expert expenses, respectively. *Id.*

The trial court erred by failing to explain the amount of its award. This warrants a remand under *Mahler*, 135 Wn.2d at 434-35. However, we also agree with the Court of Appeals' decision to reverse the award altogether because the Respondents did not act arbitrarily, vexatiously, or in bad faith.

This court reversed an award of attorney fees for arbitrary, vexatious, and bad faith pursuit of a valuation claim in *Humphrey*, 170 Wn.2d at 507-08. In that case, the dissenting shareholder, Humphrey Industries, rejected the petitioner's payment offer of $181,192.64 and demanded an additional $424,607 based on its own estimate of its shares' fair value. *Id.* at 499. After a six-day bench trial, Humphrey's interest was found to be $241,780.86—much closer to the petitioner's original offer than to Humphrey's demand. *Id.* at 500 n.6. The trial court awarded attorney fees to the petitioner, finding that Humphrey had acted "arbitrarily, vexatiously, and not in good faith in pursuing its dissenter's rights claim." *Id.* at 501. This court reversed that award, in light of the circumstances of the case. *Id.* at 507-08.

Under *Humphrey*, a dissenter does not necessarily act arbitrarily, vexatiously, or in bad faith just because he or she makes a payment demand that is ultimately

19

found to be unsupported.[8] This reflects a commonsense interpretation of the dissenters' rights statute. Under that statute, a dissenting shareholder has between 40 and 70 days to demand payment after the corporate action triggering his or her dissenter's rights.[9] But if the demand for payment remains unsettled and the corporation commences a judicial proceeding to determine fair value, the shareholder is then entitled to discovery. RCW 23B.13.300. In light of this statutory scheme, we cannot conclude that a dissenting shareholder necessarily acts arbitrarily, vexatiously, or in bad faith simply because his or her initial payment demand is higher than that ultimately supported by the evidence—the shareholder may not even be able to discover this evidence until well after the payment demand must be made. For that reason, we affirm *Humphrey*'s implicit holding: a dissenter does not act arbitrarily, vexatiously, or in bad faith just because he or she makes a payment demand that is ultimately found to be unsupported.

---

[8] *Humphrey Indus., Ltd. v. Clay Street Assoc.*, 176 Wn.2d 662, 671, 295 P.3d 231 (2013) ("This court implicitly found that it was necessary to determine whether the record established that Humphrey's actions were arbitrary, vexatious, or not in good faith, and it held that Humphrey's conduct, which included making an unsupported payment demand, did not meet that standard.").

[9] RCW 23B.13.220(4), (5) (within 10 days after the corporate action triggering dissenters' rights, the corporation must deliver to all eligible shareholders a notice of dissenters' rights; such notice must set a date by which the corporation must receive the payment demand, which must be between 30 and 60 days after the notice is delivered).

We further hold that the Respondents in this case were not engaging in conduct that justifies an award of attorney or expert fees under the dissenter's right statute. The Respondents were pursuing a misguided legal theory: that a corporate petitioner's share valuation can never be approved on summary judgment, unless the dissenting shareholders agree. While we reject that theory, we do not find that pursuing it constituted vexatious, arbitrary, or bad faith behavior.

Had the Respondents not harbored a good faith belief in their interpretation of the dissenters' rights statute, they surely would not have waived their request for a continuance at the summary judgment hearing. (In preparation for their motion for reconsideration, the Respondents promptly obtained a declaration from Hecker authenticating his report.) Their legal strategy was flawed, but it was not arbitrary, vexatious, or pursued in bad faith. We therefore affirm the Court of Appeals' decision to reverse the award of attorney and expert fees.

## CONCLUSION

Because the Respondents provided no admissible evidence to support their share valuations, the trial court properly granted the corporate petitioner's motion for summary judgment. We therefore reverse the Court of Appeals' decision on the summary judgment ruling. We affirm the Court of Appeals, however, as to the

attorney and expert fees. The trial court abused its discretion by awarding those fees, because the Respondents did not act arbitrarily, vexatiously, or in bad faith.

_____
Gordon McCloud, J.

WE CONCUR:

_____
Madsen, C.J.

_____

_____

_____
Fairhurst. J.

_____
Stephens, J

_____
Wiggins, J.

_____
González, J.

_____
Leach, J.P.T.