IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CONNELL OIL INC., A Washington Corporation, | ) ) ) | No. 35372-9-III |
| Respondent, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| ERIK MCCONNELL JOHNSON and JACKIE MCCONNELL JOHNSON, a marital community, | ) ) ) ) | |
| Appellants. | ) ) | |

LAWRENCE-BERREY, C.J. — Are cards used to access unmanned fuel pumps "credit cards" so that cardholder liability is limited for unauthorized fuel purchases?

15 U.S.C § 1643 of the Truth in Lending Act (TILA)[1] limits a cardholder's liability for the unauthorized use of a credit card. Staff working for a division of the Federal Reserve Board (FRB) issues official commentaries to TILA. One official commentary states that a credit card does not include a card required to be used to obtain

---

[1] Truth in Lending Act, 15 U.S.C. §§ 1601-1667f.

petroleum products for business purposes from a wholesale distribution facility, regardless of payment terms. In general, an official commentary is binding on a court unless it is arbitrary, capricious, or manifestly contrary to the statute.

We hold that the commentary at issue here is binding because it is not arbitrary, capricious, or manifestly contrary to the statute. We conclude that Erik Johnson's stolen petroleum card is a type of card described by the commentary, and his liability for its unauthorized use is not limited by TILA. In so holding, we affirm the trial court.

FACTS

Connell Oil is in the business of selling and distributing wholesale fuel for commercial purposes. It provides its customers access to unmanned fueling stations commonly used by police, fire, transit, and school districts.

The unmanned fuel pumps are inoperable unless the customer uses an appropriate access device. Early on, the access device was a key, referred to as a keylock system. As technology developed, the keylock system was replaced with an optical-lock, which is a card with holes in it. Later, as computers were used to read magnetic strips, the optical-lock system was replaced by the current cardlock system.

The cardlock system is a plastic card that looks exactly like a credit card. The card has a magnetic strip, which when swiped, communicates the customer's account number

2

to Connell Oil's computer system. For security, the customer must enter a personal identification number (PIN) before the pump is activated. Connell Oil recommends to its customers that they keep their PIN separate from their card.

Once the customer completes fueling, an invoice is generated for the specific amount of fuel purchased. Invoices are sent to customers at regular intervals, twice each month. Customers are required to pay the invoices within 15 days. Unpaid balances accrue interest at 1.5 percent per month.

Since 2009, Erik Johnson has been a customer of Connell Oil. On July 27, 2014, Mr. Johnson's wallet was stolen from his farm vehicle. The next day, Mr. Johnson began contacting issuers of his stolen credit and debit cards. On July 31, 2014, Mr. Johnson telephoned Connell Oil. There is a factual dispute whether Mr. Johnson asked Connell Oil to cancel his stolen petroleum card or simply ordered one or more cards. But there is no factual dispute that the cardlock agreement required cancellation to be in writing, and Mr. Johnson never requested in writing that his stolen petroleum card be canceled.

Around September 8, 2014, Connell Oil called Mr. Johnson and notified him that it was terminating his account because of suspicious activity. Because Mr. Johnson had kept his PIN and petroleum card together in his wallet, the thief was able to steal $34,649.68 worth of fuel during the six weeks before the card's cancelation. Although

3

Connell Oil had invoiced Mr. Johnson three times since his wallet was stolen, Mr. Johnson did not detect the fuel theft. Mr. Johnson explained to Connell Oil that he was too busy during harvest to open its invoices. The parties were unable to resolve the dispute.

Connell Oil served Mr. Johnson and his wife, Jackie McConnell Johnson, with a complaint alleging that the Johnsons were liable for $34,649.68 in stolen card charges, plus interest, costs, and attorney fees. The Johnsons then filed an answer with affirmative defenses, including limitations on cardholder liability for lost or stolen cards as well as counterclaims under TILA, Washington's Consumer Protection Act, chapter 19.86 RCW, and negligence.

*Procedure*

After discovery, the Johnsons filed a motion for partial summary judgment and Connell Oil filed a cross-motion. The court ruled that the petroleum card issued by Connell Oil was not a credit card as contemplated by TILA. The court held that the Johnsons' defenses under TILA were inapplicable, granted Connell Oil's motion for summary judgment, and dismissed the Johnsons' affirmative defenses and counterclaims. The court entered judgment in favor of Connell Oil for the unpaid petroleum charges,

plus interest, costs, and reasonable attorney fees in accordance with the cardlock

agreement.

The Johnsons timely appealed.

## ANALYSIS

### A.    STANDARD OF REVIEW

This court reviews a summary judgment order de novo, engaging in the same

inquiry as the trial court. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40

(2014).  "Summary judgment is appropriate only if 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law.'"  *RockRock Grp., LLC v. Value Logic, LLC*, 194 Wn. App.

904, 913, 380 P.3d 545 (2016) (quoting CR 56(c)), *review denied*, 187 Wn.2d 1002, 386

P.3d 1078 (2017).  A fact is material when the outcome of the litigation depends on it, in

whole or in part.  *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115

Wn.2d 506, 516, 799 P.2d 250 (1990).  This court views all facts and reasonable

inferences in the light most favorable to the nonmoving party.  *SentinelC3*, 181 Wn.2d at

140.  Summary judgment is appropriate if reasonable persons could reach but one

conclusion from all the evidence.  *Id.*

5

### B.    PURPOSE OF TILA

The purpose of TILA is to

> assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a).  Because TILA is remedial in nature, the substance rather than the form of the credit transactions should be examined in cases arising under it.  *Hickman v. Cliff Peck Chevrolet, Inc.*, 566 F.2d 44, 46 (8th Cir. 1977).  TILA is liberally construed to protect consumers.  *Burnett v. Ala Moana Pawn Shop*, 3 F.3d 1261, 1262 (9th Cir. 1993).

### C.    DEFERENCE TO FEDERAL RESERVE BOARD REGULATIONS AND OFFICIAL COMMENTARY

Congress expressly delegated authority to the FRB to promulgate regulations with such classification, differentiations, or other provisions that are in the FRB's opinion necessary or proper to effectuate the purposes of TILA, to prevent circumvention or evasion thereof, or to facilitate compliance therewith.  *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 238, 124 S. Ct. 1741, 158 L. Ed. 2d 450 (2004).  "Congress has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of truth-in-lending law."  *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980).

In accordance with this delegated authority, the FRB has promulgated a detailed and comprehensive set of rules known as "Regulation Z," which is codified at 12 C.F.R. § 226.1(a). The staff of the Division of Consumer and Community Affairs to the FRB issues official interpretations of Regulation Z, referred to as commentary. *See* 12 C.F.R. pt. 226, supp. I, (1). Courts have recognized that the FRB "'play[s] a pivotal role in 'setting [TILA] in motion . . .'" and have consistently afforded the FRB's regulations and staff interpretations great deference. *Household Credit Servs.*, 541 U.S. at 238 (alterations in original) (internal quotation marks omitted) (quoting *Ford Motor Credit Co.*, 444 U.S. at 566).

D.       LIMITATION OF LIABILITY FOR UNAUTHORIZED CREDIT CARD USE

*1.       Overview*

15 U.S.C. § 1643(d) states: "Except as provided in this section, a cardholder incurs no liability from the unauthorized use of a credit card." 15 U.S.C. § 1643(a)(1) limits a cardholder's liability to $50, if various conditions were met, including that the card issuer gave adequate notice of the cardholder's limitation of liability.

The term "cardholder" includes "any person to whom a credit card is issued." 15 U.S.C. § 1602(n). The term "person" means "a natural person or an organization." 15 U.S.C. § 1602(e). The term "organization" means "a corporation, government or

governmental subdivision or agency, trust, estate, partnership, cooperative, or association." 15 U.S.C. § 1602(d). Therefore, 15 U.S.C. § 1643 significantly limits a person's and a business's liability for the unauthorized use of their credit card.

The term "credit card" "means any card, plate, coupon book or other device existing for the purpose of obtaining money, property, labor, or services on credit." 15 U.S.C. § 1602(l). The term "credit" "means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). "Deferral of debt" includes even short-term deferrals where payment in full is due promptly. *Telco Commc'ns Grp., Inc. v. Race Rock*, 57 F. Supp. 2d 340, 343 (E.D. Va. 1999). Therefore, any card that allows a debtor to defer payment of a debt, even for a short time, is a credit card.

In furtherance of this section, the FRB promulgated 12 C.F.R. § 226.12(b)(1)(ii), which provides in relevant part:

> The liability of a *cardholder* for unauthorized use of a credit card shall not exceed the lesser of $50 or the amount of money, property, labor, or services obtained by the unauthorized use before notification to the card issuer under paragraph (b)(3) of this section.

(Emphasis added) (footnote omitted).

By regulation, "cardholder" is defined as "a natural person to whom a credit card is issued for consumer credit purposes." 12 C.F.R. § 226.2(a)(8). But for purposes of

8

§ 226.12(a) and (b), "cardholder" also "includes any person to whom a credit card is issued for any purpose, including business, commercial or agriculatural use . . . ." 12 C.F.R. § 226.2(a)(8). So under both the statute and the regulation, natural persons as well as businesses enjoy extensive protection from the unauthorized use of their credit cards.

However, an official commentary provides:

> [A] credit card does not include, for example
> . . . .
> . . . [a]ny card . . . that is used in order to obtain petroleum products for business purposes from a wholesale distribution facility . . . and that is required to be used without regard to payment terms.

12 C.F.R. pt. 226, supp. I, subpt. A, § 226.2(a)(15)(2)(ii)(B) (hereafter "Commentary (B)").

### 2. Whether Commentary (B) is binding

To determine if an FRB regulation or a staff commentary is binding, a court is "faced with only two questions." *Household Credit Servs.*, 541 U.S. at 239. First, the court must ask if "'Congress has directly spoken to the precise question at issue.'" *Id.* (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)). Second, if "Congress has 'explicitly left a gap for the agency to fill,' the agency's regulation is 'given controlling weight unless [it is] arbitrary,

9

capricious, or manifestly contrary to the statute.'" *Id.* (alteration in original) (quoting *Chevron U.S.A.*, 467 U.S. at 843-44).

Connell Oil argues that Congress has not directly spoken to the precise question of whether cardlocks used to access fuel pumps at unmanned stations are credit cards under TILA. We agree.

A cardlock serves two functions. First, it unlocks an unmanned fuel pump to facilitate a wholesale purchase of gasoline. Second, it facilitates a short-term credit purchase. Although the latter function is within the definition of a credit card, the former is not.

Nor is Commentary (B) arbitrary, capricious, or manifestly contrary to the statute. The device used to access fuel at Connell Oil's unmanned fuel stations evolved from a keylock, to an optical-lock, to a card with a magnetic strip. All versions of this evolution allowed a customer to access a fuel pump at an unmanned station so as to purchase fuel at wholesale prices. Because TILA is remedial in nature, the substance rather than the form of the transaction should be examined. *Hickman*, 566 F.2d at 46. The substance of the transaction has not changed through this evolution. Commentary (B) reasonably concluded that Congress had no more desire to regulate a cardlock than it had to regulate a keylock or an optical-lock device.

*3.      Whether the cardlock is a device that conforms to Commentary (B)*

The Johnsons argue that Connell Oil's cardlock device does not conform to

Commentary (B).  Specifically, the Johnsons argue that the cardlock device not only

provides access to a fuel pump, but also allows customers to accumulate large credit

balances on their accounts.  Even if true, we disagree that this causes the device to not

conform to Commentary (B).

Commentary (B) states, "[a] credit card does not include . . . [a]ny card . . . that is

used to obtain petroleum products for business purposes from a wholesale distribution

facility . . . *without regard to payment terms*."  Commentary (B) itself states it makes no

difference if the card permits a business customer to accumulate a balance and pay

interest on that balance.

*4.      Whether Mr. Johnson used his petroleum card for business purposes*

The Johnsons do not argue on appeal that they primarily used their stolen

petroleum card for personal, as opposed to business, purposes.  Shalon Braswell, Connell

Oil's Chief Operating Officer, stated by declaration: "[The Johnsons] requested the use of

all fuel type products to include, Diesel, Gas, and 'Off Road' which is a dyed farm diesel

commonly used for agricultural purposes."  Clerk's Papers (CP) at 411-12.  Connell Oil's

officer further stated: "Johnson has paid [our] invoices through the business entity of

11

Johnson Enterprise." CP at 412. In response, Mr. Johnson stated by declaration: "My Connell Oil credit card allowed me to buy fuel for personal and family use, which I have done on occasion." CP at 227. Because the Johnsons did not raise the issue on appeal, we infer that Mr. Johnson used his petroleum card primarily for business purposes. Nevertheless, the Johnsons failed to preserve the issue. RAP 2.5(a).

In summary, we conclude the trial court did not err when it ruled that the stolen cardlock was not a credit card for purposes of TILA and entered judgment in favor of Connell Oil.

E.     ATTORNEY FEES AND COSTS

Connell Oil, citing RAP 18.1, RCW 4.84.330, and its contract with Mr. Johnson, requests an award of attorney fees and costs.

RAP 18.1 requires a party to request attorney fees and expenses if recovery of such is permitted by applicable law. If recovery of attorney fees and costs is authorized by contract, RCW 4.84.330 requires a court to award the prevailing party its reasonable attorney fees and costs.

The parties' contract provides in relevant part: "I agree to pay . . . any attorney and/or court fees incurred in the collection of unpaid accounts. . . . /s/ Erik Johnson."

No. 35372-9-III
*Connell Oil v. Johnson*

CP at 416. Subject to its compliance with RAP 18.1(d), we award Connell Oil its

reasonable attorney fees and costs on appeal.

Affirmed.

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

WE CONCUR:

_Korsmo, J._
Korsmo, J.

_Siddoway, J._
Siddoway, J.

13